# ZUKERMAN GORE BRANDEIS & CROSSMAN, LLP

Eleven Times Square  
New York, New York 10036  

212.223.6700  
212.223.6433 *fax*  

www.zukermangore.com

**Via EDNY ECF**                                                                                  September 29, 2022

Honorable Rachel P. Kovner  
United States District Judge  
United States District Court, E.D.N.Y.  
225 Cadman Plaza East  
Brooklyn, New York 11201  

**Re:**   *McCabe v. CVS Health Corp. and CVS Pharmacy, Inc.,* **Case No. 1:22-CV-3116**

Dear Judge Kovner:

We are counsel to defendants CVS Health Corporation ("CVS Health") and CVS Pharmacy, Inc. ("CVS Pharmacy," collectively "CVS") in this putative class action. We write in response to the amended complaint filed by plaintiff on September 15, 2022.

We previously wrote to the Court on July 21, 2022, to request a pre-motion conference and described in detail both the allegations in the complaint and several reasons why it fails to state a claim. By order dated July 26, 2022, Your Honor determined that a pre-motion conference was unnecessary and gave CVS Health until September 1, 2022, to serve its motion to dismiss.[1] We did so on that date (but did not file in accordance with the Court's bundling rule). Our motion seeks dismissal primarily because the complaint is premised on the demonstrably false allegation that CVS Health assumed a $10 million debt to the American Diabetes Association (the "ADA"). Plaintiff's allegation is contradicted by the agreement between the ADA and CVS Health's subsidiary, CVS Pharmacy (the "ADA Agreement"), which is attached as an exhibit to our motion. In these circumstances, as the authority we cite confirms, the agreement controls and the complaint should be dismissed. For this same reason, the motion to dismiss contends that leave to amend would be futile.

On September 15, 2022, plaintiff nevertheless filed an amended complaint. Although the amended complaint contains several new allegations, most of these pertain to collateral matters or expand upon the false premise that CVS assumed a $10 million debt to the ADA. None of the new allegations cure the fundamental defects of the original pleading. Thus, for example, plaintiff adds allegations that the ADA Agreement should have been publicly filed by the non-party ADA in Massachusetts. (Am. Compl. ¶¶ 62-70). While we understand that no such filing was required, the topic is unrelated to plaintiff's claim that he and other putative class members

---

[1] CVS Health is the only defendant listed in the original complaint. The amended complaint adds CVS Pharmacy, a wholly-owned subsidiary, as a defendant, and asserts the same allegations against each of the defendants.

were defrauded when they donated to the ADA during the checkout process at CVS retail stores in November 2021.

Plaintiff also miscasts a press release issued by the ADA and CVS in November 2021 (Am. Compl. ¶¶ 51-53), but again, it is irrelevant: the fraud allegations are based solely upon the (wholly accurate) checkout message to customers soliciting ADA donations. Even if the press release were relevant, it does not support plaintiff's claims. Quite the opposite, the press release clearly states that CVS Health would host an in-store fundraising campaign to give customers an opportunity to support the ADA. (Am. Compl. ¶ 51). The press release is consistent with the checkout message in that customer donations were made to the ADA through CVS's in-store fundraising campaign. (Am. Compl. ¶ 13).

As we noted above, many of plaintiff's new allegations are based upon the contrary-to-fact assertion that CVS assumed a debt of $10 million to the ADA, which the pleading defines as the "CVS Debt." (Am. Compl. ¶ 26). This is troubling, given that plaintiff now has the ADA Agreement, which by its terms sets forth CVS's agreement to "offer opportunities to its customers to make a donation to the ADA" and "commits *to raise for the ADA* a minimum of $10 million" for the term of the agreement.[2] (ADA Agreement p. 18; emphasis added).

Notwithstanding these plain contractual terms, plaintiff newly alleges that because of the purported $10 million CVS Debt, the donations made by CVS customers to the ADA were not tax deductible. (Am. Compl. ¶¶ 54-61). Again, there is no such debt, and all the donations were paid to the ADA. The donations were indeed tax deductible for those customers.

Elsewhere, plaintiff adds new allegations regarding an amendment to the ADA Agreement that permits CVS to direct funds raised in excess of $10 million to support the ADA's mission, subject to ADA approval (the "Amendment"). Once again, however, plaintiff's allegation of wrongdoing contradicts the express terms of the ADA Agreement. According to plaintiff, with this Amendment in hand, "CVS was no longer required to give *any* [donations over $10 million] to the ADA." (Am. Compl. ¶ 1; emphasis in original). To the contrary, the text of the ADA Agreement immediately preceding the Amendment provides: "Any amounts raised over $10,000,000 minimum *will be donated to the ADA* as well." (ADA Agreement p. 18; emphasis added). Both before and after the Amendment, CVS was and is required to give all donations it receives to the ADA.

---

[2]   Thus, CVS has no existing obligation to pay anything, much less $10 million, to the ADA. Rather than accept this fact, plaintiff points to introductory language in the ADA Agreement referencing CVS's "pledge" of $10 million dollars over three years to support the prevention and management of diabetes. (ADA Agreement p. 8). The general use of the word "pledge" is neither inconsistent with the fundraising obligation CVS assumed nor turns that obligation into a $10 million debt.

Plaintiff also asserts a nationwide breach of contract claim without alleging the existence, terms, or parties to the contract that was allegedly breached. (Am. Compl. ¶¶ 80-81). Assuming for the sake of argument that plaintiff claims that CVS and its customers formed a contract that the donations made by the customers would be paid to the ADA, then once again the claim fails on its face. As plaintiff elsewhere admits, CVS turned over its customers' donations to the ADA following the November 2021 fundraising campaign, so the contract (that we presume plaintiff alleges) was not breached. (Am. Compl. ¶ 33).

Plaintiff has affirmatively chosen to disregard those provisions of the ADA Agreement that are contrary to his fanciful narrative. Prior to filing the amended complaint, plaintiff's counsel wrote to us to ask whether the fundraising Campaign in November 2021 raised in excess of $10 million, thereby triggering the Amendment. We responded:

> CVS Health confirms that the donations did not total $10 million and that all amounts raised in the Campaign were timely transmitted by CVS Health to the ADA, just as all amounts raised in the future will be so transmitted to the ADA.

Three hours later, plaintiff filed the amended complaint.

\* \* \*

Under Second Circuit precedent, the Court may deny the pending motion to dismiss as moot or evaluate the motion in light of the facts alleged in the amended complaint. *Pettaway v. Nat'l Recovery Sols. LLC,* 955 F.3d 299, 303-304 (2d Cir. 2020). (If Your Honor wishes to review our pending motion to dismiss, we will forward it immediately.) Should the Court deny the motion as moot because of the amended complaint, we respectfully request a pre-motion conference in order to go forward with a motion to dismiss the amended pleading on essentially the same grounds. Otherwise, we will address the new allegations in our next submission. Thank you.

Respectfully,

/s/ Edward L. Powers

Edward L. Powers

cc: Todd C. Bank, Esq.
    (Counsel to Plaintiff, via ECF)