TODD C. BANK, ATTORNEY AT LAW, P.C.
119-40 Union Turnpike, Fourth Floor
Kew Gardens, New York  11415
Telephone: (718) 520-7125
Facsimile: (856) 997-9193

www.toddbanklaw.com                                                                                              tbank@toddbanklaw.com

September 30, 2022

United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201
Attn.: Judge Rachel P. Kovner

        **Re:**    **Kevin McCabe v. CVS Health Corporation**
                **Case No. 1:22-cv-03116-RPK-RML**

Dear Judge Kovner:

      On behalf of the plaintiff, Kevin McCabe, I hereby respond to the letter (Dkt. No. 14) dated September 29, 2022, by CVS Health Corporation and CVS Pharmacy, Inc. (collectively, "CVS"), in which CVS indicates that it prefers to have the Court evaluate CVS's pending dismissal motion in light of the Amended Complaint, as opposed to having the Court rule that the motion is moot. Mr. McCabe is amenable to this preference, and therefore will, absent a contrary instruction from the Court, address the pending motion as if it is directed toward the Amended Complaint.

**The CVS-ADA Agreement Supports Plaintiff's Claims**

      CVS states that "[o]ur motion seeks dismissal primarily because the complaint is premised on the demonstrably false allegation that CVS Health assumed a $10 million debt to the American Diabetes Association (the 'ADA')." CVS Ltr. at 1. CVS adds that: "many of plaintiff's new allegations are based upon the contrary-to-fact assertion that CVS assumed a debt of $10 million to the ADA, which the pleading defines as the 'CVS Debt.' (Am. Compl. ¶ 26). This is troubling, given that plaintiff now has the [CVS-]ADA Agreement, which by its terms sets forth CVS's agreement to 'offer opportunities to its customers to make a donation to the ADA' and 'commits to raise for the ADA a minimum of $10 million' for the term of the agreement." *Id.* at 2 (footnote omitted). Similarly, CVS contends, with respect to McCabe's allegation that the CVS-ADA Agreement states that "'[CVS] has pledged $10 million dollars over three years,'" Am. Compl., ¶ 25, that "[t]he general use of the word 'pledge' is neither inconsistent with the fundraising obligation CVS assumed nor turns that obligation into a $10 million debt." CVS Ltr. at 2, n.2.

      On the contrary, the CVS-ADA Agreement indisputably shows that CVS assumed a $10 million debt to the ADA. It appears, however, that CVS is seeking to cast itself as a guarantor of its customers because CVS was obligated to ask them for donations. However, in order for CVS to have been a guarantor, it would have had to guarantee a third party's debt, whereas no such debt existed because "[a]ll Campaign Donations were voluntary in that they were not based on any legal obligation that Customers owed to the ADA, CVS, or any other person or entity." Am. Compl., ¶

31. Accordingly, "CVS was the only person or entity that was legally responsible for the ADA's receiving of $10,000,000." *Id.*, ¶ 32. This is why 'donations' by CVS's customers were not tax-deductible (either with respect to the first $10 million of donations or on a *pro rata* basis if more than that amount is raised).

If "A" enters into a contract with "B" in which "A" promises that, by a certain date, "B" will receive a certain amount of amount of money (the "guaranteed amount"), that "A" will try to get "C" to pay the guaranteed amount, and that "A" will pay "C" the difference between the guaranteed amount and any lesser amount (down to zero) that "C" pays, then "A," upon the contract's taking effect, has a debt to "B" of the guaranteed amount. This is plainly undeniable. It is also plainly undeniable that, to the extent that "C" voluntarily pays the guaranteed amount to "B," the debt of "A" is reduced to the same extent. Legally, it is entirely irrelevant whether "A" anticipates that "C" will pay some or all of the guaranteed amount. This is precisely the situation here. Thus, CVS's expectations regarding the amount of money that its customers would voluntarily 'donate' does not change the critical fact that CVS, upon the CVS-ADA Agreement's taking effect, had a debt of $10 million to the ADA, and that, therefore, its customers' 'donations' paid down this debt. Accordingly, what is "troubling" (CVS Ltr. at 2) is not McCabe's allegations but the fact that CVS's counsel has so brazenly twisted the facts.

**The Amended Complaint Correctly Describes
the Amendment to the CVS-ADA Agreement**

CVS contends that "plaintiff adds new allegations regarding an amendment to the [CVS-]ADA Agreement that permits CVS to direct funds raised in excess of $10 million to support the ADA's mission, subject to ADA approval (the 'Amendment')," CVS Ltr. at 2, and that McCabe's allegation that, as a result, "'CVS was no longer required to give *any* [donations over $10 million] to the ADA,'" *id.*, quoting Am. Compl., ¶ 1 (emphasis in Am. Compl.) is erroneous because, "[t]o the contrary, the text of the ADA Agreement immediately preceding the Amendment provides: 'Any amounts raised over $10,000,000 minimum *will be donated to the ADA* as well.'" CVS Ltr. at 2, quoting CVS-ADA Agreement, p.18 (emphasis by CVS). Thus, according to CVS, "[b]oth before and after the Amendment, CVS was and is required to give all donations it receives to the ADA." *Id.* The fact that the amendment *added to*, as opposed to having *replaced*, the language of the original CVS-ADA Agreement supports CVS's claim. On the other hand, the language of the Amendment, which is "'[CVS] may direct any funds raised in excess of $10,000,000 . . . to support other initiatives at the [CVS]'s discretion, so long as such other initiatives advance the ADA's mission. Such direction shall be provided in writing by the Company to the ADA and shall be subject to the approval of the ADA, such approval not to be unreasonably withheld,'" Am. Compl., ¶ 48, speaks for itself, and is also reflected in one of the "Whereas" clauses on page 1 of the Amendment: "the Parties seek to *modify* the Agreement to clarify that the Company may direct any funds raised in excess of $10,000,000 in the three-year period to support *other initiatives* at the Company's discretion, so long as such other initiatives advance the *ADA's mission*" (emphases added).

CVS concludes by stating that, "[p]rior to filing the amended complaint, plaintiff's counsel wrote to us to ask whether the fundraising Campaign in November 2021 raised in excess of $10 million, thereby triggering the Amendment," CVS Ltr. at 3, and that "[w]e responded" in the

negative. *Id.* Even assuming, *arguendo*, that McCabe is obligated to accept the statement of CVS's counsel, it is unclear why that statement is relevant to the fact that, "[t]hree hours later, plaintiff filed the amended complaint." *Id.*

**The Amended Complaint Properly Alleges the Existence
of a Contract Between CVS and its Customers**

CVS contends that "Plaintiff also asserts a nationwide breach of contract claim without alleging the existence, terms, or parties to the contract that was allegedly breached." CVS Ltr. at 3. This is untrue. *See* Am. Compl., ¶¶ 13,15, 42-45.

**The CVS-ADA Agreement was Not Publicly
Accessible Even Though it was Required to be**

CVS states: "plaintiff adds allegations that the [CVS-]ADA Agreement should have been publicly filed by the non-party ADA in Massachusetts. (Am. Compl. ¶¶ 62-70). While we understand that no such filing was required, the topic is unrelated to plaintiff's claim that he and other putative class members were defrauded when they donated to the ADA during the checkout process at CVS retail stores in November 2021." CVS Ltr. at 1-2. First, McCabe alleges that this violation of the law "reflect[s] CVS's bad faith and fraudulent intent." Am. Compl., ¶ 62. Second, McCabe does not allege that the ADA was required to file the CVS-ADA Agreement. Rather, Massachusetts law did not require any particular party to file the CVS-ADA Agreement, but simply required that it be "'filed . . . within ten days after such contract or agreement is entered into,'" *id.*, ¶ 66, and states that "'[n]o solicitation shall be conducted prior to the filing of such contract or agreement.'" *Id.* Thus, CVS did not lawfully solicit donations in Massachusetts. Notably, CVS does not explain why McCabe's allegations regarding this matter are flawed.

**CVS's Press Release was Misleading**

CVS contends that "Plaintiff also miscasts a press release issued by the ADA and CVS in November 2021," CVS Ltr. at 2, because "the press release clearly states that CVS Health would host an in-store fundraising campaign to give customers an opportunity to support the ADA. (Am. Compl. ¶ 51) [and] is consistent with the checkout message in that customer donations were made to the ADA through CVS's in-store fundraising campaign. (Am. Compl. ¶ 13)." CVS Ltr. at 2. On the contrary, the press release, which is by CVS, not CVS *and* the ADA, "reflect[s] CVS's bad faith and fraudulent intent," Am. Compl., ¶ 51, because it "clearly implied that CVS's $10 million commitment was separate [from], apart [from], and independent of Campaign Donations." *Id.*

Sincerely,

  s/ *Todd C. Bank*

Todd C. Bank

TCB/bd