UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------

KEVIN McCABE

                        *Plaintiff*,

        -against-

CVS HEALTH CORPORATION and CVS
PHARMACY, INC.,

                        *Defendant.*

------------------------------------------------------

No. 1:22-cv-3116 (RPK)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

ZUKERMAN GORE BRANDEIS
  & CROSSMAN, LLP
Edward L. Powers
Florence M. Craig
Vyasa M. Murthy
Eleven Times Square
New York, New York 10036
Telephone: (212)-223-6700

*Attorneys for Defendants CVS Health
Corporation and CVS Pharmacy, Inc.*

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

ARGUMENT .................................................................................................................. 5

I.  Standard .............................................................................................................. 5

II. The Fundamental Premise of the Amended Complaint is Wrong as a Matter
    of Law, Accounting Principles, and Common Sense ......................................... 6

    A. CVS Agreed to Fundraise ............................................................................ 6

    B. Unlike a Fixed Obligation, a Conditional Promise is Not Enforceable
       Unless and Until the Condition is Met.......................................................... 7

    C. Under Applicable Accounting Rules, CVS Has No Obligation Unless
       and Until the Triggering Event Occurs ........................................................ 9

III. Without the Erroneous CVS Debt Allegation, Plaintiff's Claim of Fraud Fails .............. 10

    A. The Complaint Fails To Allege A Misstatement of Material Fact ............................ 11

        1.  The Amendment to the ADA Agreement ............................................. 12

        2.  The Press Release ............................................................................... 13

        3.  The Campaign Donations Are Tax Deductible.................................... 13

        4.  The Massachusetts Alleged Filing Requirement ................................ 14

    B. To the Extent Plaintiff's Fraud Claim is Based Upon an Alleged Omission, the
       Amended Complaint Fails to Plead a Material Omission or a Duty to Disclose........ 14

IV. Plaintiff Fails to State a Claim for Breach of Contract.................................... 16

V.  Without the Erroneous CVS Debt Allegation, Plaintiff's Claims for Violation of
    Consumer Protection Laws Fail........................................................................ 17

    A. Plaintiff Does Not Adequately Plead His NYGBL Claim........................... 17

    B. Plaintiff's Claims Under The Remaining Consumer Protection Statutes Fail As A
       Matter Of Law.............................................................................................. 18

    C. Plaintiff's Claims Under At Least Six States Are Barred By Class Action Waivers . 22

VI. The Amended Complaint Should Be Dismissed With Prejudice Because Leave To
    Amend Would Be Futile ................................................................................... 23

CONCLUSION .......................................................................................................... 24

TABLE OF AUTHORITIES

Cases

*42-50 21st St. Realty LLC v. First Cent. Sav. Bank*,
   No. 20-CV-5370 (RPK) (RLM), 2022 WL 1004187 (E.D.N.Y. April 4, 2022) ..................... 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................................... 5, 6

*Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Cap., Inc.*,
   821 F.3d 297 (2d Cir. 2016) ................................................................................................. 8

*Beach v. Citigroup Alt.*,
   No. 12 Civ. 7717(PKC), 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) ...................................... 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 5

*Bowring v. Sapporo U.S.A., Inc.*,
   234 F. Supp. 3d 386 (E.D.N.Y. 2017) ................................................................................. 18

*Daniel v. Mondelez Int'l, Inc.*,
   287 F. Supp. 3d 177 (E.D.N.Y. 2018) ................................................................................. 18

*Delgado v. Ocwen Loan Servicing, LLC*,
   No.13-CV-4427 (NGG) (ST), 2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017) .......................... 23

*Doyle v. Mastercard Int'l Inc.*,
   700 Fed. App'x 22 (2d Cir. 2017) ....................................................................................... 16

*Elghanian v. Harvey*,
   671 N.Y.S.2d 266 (N.Y. App. Div. 1st Dep't 1998) ............................................................. 15

*ESRT 250 W. 57th St., L.L.C. v. 13D/W. 57th LLC*,
   50 N.Y.S.3d 363 (N.Y. App. Div. 1st Dep't 2017) ............................................................... 15

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004) ............................................................................................... 10

*F.D.I.C. v. U.S. Mortg. Corp.*,
   132 F. Supp. 3d 369 (E.D.N.Y. 2015) ................................................................................. 16

*Flexborrow LLC v. TD Auto Fin. LLC*,
   255 F. Supp. 3d 406 (E.D.N.Y. 2017) ................................................................................. 14

ii

*Gilleo v. JM Smucker Co.*,
  No. 20-CV-02519 (PMH), 2021 WL 4341056 (S.D.N.Y. Sep. 23, 2021) ....................... 17, 18

*Goldman v. Belden*,
  754 F.2d 1059 (2d Cir. 1985).................................................................................5-6

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
  748 F.2d 729 (2d Cir. 1984)................................................................................15-16

*Koch v. Christie's Int'l PLC*,
  699 F.3d 141 (2d Cir. 2012)..................................................................................... 5

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011)..................................................................................... 6

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
  897 F.3d 88 (2d Cir. 2018)...................................................................................... 18

*Leibovitz v. City of N.Y.*,
  No. 14-CV-3297 (RA), 2016 WL 3661530 (S.D.N.Y. July 1, 2016)....................................... 23

*Leonard v. Abbott Labs., Inc.*,
  No. 10-CV-4676 (ADS)(WDW), 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) ....................... 18

*Lockheed Martin Corp. v. Retail Holdings, N.V.*,
  639 F.3d 63 (2d Cir. 2011)....................................................................................6-7

*MacNaughten v. Young Living Essential Oils*, LC,
  575 F. Supp. 3d 315 (N.D.N.Y. 2021)......................................................................... 18

*MacSwan v. Merck & Co., Inc.*,
  Case No. 1:20-cv-1661, 2022 WL 1415031 (W.D.N.Y. May 4, 2022)................................... 11

*McCabe v. ConAgra Foods, Inc.*,
  No. 16-CV-93 (ARR) (SLT), 2016 WL 8943310 (E.D.N.Y. Aug. 29, 2016),
  *aff'd*, 681 Fed. App'x 82 (2d Cir. 2017) ................................................................... 2

*MHR Cap. Partners LP v. Presstek Inc.*,
  912 N.E.2d 43 (N.Y. 2009)................................................................................... 7, 8

*Mobil Oil Corp. v. Joshi*,
  609 N.Y.S.2d 214 (N.Y. App. Div. 1st Dep't 1994) ...................................................... 15

*N.Y. Fruit Auction Corp. v. City of N.Y.*,
  439 N.Y.S.2d 648 (N.Y. App. Div. 1st Dep't 1981), *aff'd*, 439 N.E.2d 356 (N.Y. 1982)........ 11

*O'Brien v. Nat'l Prop. Analysts Partners*,
   936 F.2d 674 (2d Cir. 1991) .................................................................................. 11

*Olson v. Major League Baseball*,
   29 F.4th 59 (2d Cir. 2022) ..................................................................................... 14

*Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*,
   660 N.E.2d 415 (N.Y. 1995) ..................................................................................... 8

*Perez v. B. Braun Med., Inc.*,
   No.17 Civ. 8512 (LLS), 2018 WL 2316334 (S.D.N.Y. May 9, 2018) ...................... 14

*Poindexter v. EMI Record Grp. Inc.*,
   No. 11 Civ. 559(LTS)(JLC), 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ............ 6

*Richmond v. Nat'l Grid*,
   No. 12–CV–1319 (DLI)(VMS), 2013 WL 1338870 (E.D.N.Y. Mar. 29, 2013) ..... 10

*S'holder Representative Servs. LLC v. Sandoz Inc.*,
   No. 653506/2013, 2015 WL 1209358 (Sup. Ct., N.Y. County Mar. 16, 2015) ...... 15

*Schlaifer Nance & Co. v. Estate of Warhol*,
   119 F.3d 91 (2d Cir. 1997) ..................................................................................... 10

*SNS Bank, N. V. v. Citibank, N.A.*,
   777 N.Y.S.2d 62 (N.Y. App. Div. 1st Dep't 2004) ................................................ 15

*Sohm v. Scholastic Inc.*,
   959 F.3d 39 (2d Cir. 2020) ....................................................................................... 8

*Sutton v. E & B Giftware LLC*,
   No. 503296/13, 2013 WL 6583960 (Sup. Ct., Kings County Dec. 3, 2013) ............ 8

*Swan Media Grp., Inc. v. Staub*,
   841 F. Supp. 2d 804 (S.D.N.Y. 2012) .................................................................... 16

*Torres v. Blackstone Grp.*,
   No. 18-CV-6434 (RA), 2019 WL 4194496 (S.D.N.Y. Sept. 3, 2019),
   *aff'd*, 836 F. App'x 49 (2d Cir. 2020) ................................................................... 23

*United States ex rel. Tessler v. City of N.Y.*,
   712 F. App'x 27 (2d Cir. 2017) .............................................................................. 11

*Utts v. Bristol-Myers Squibb Co.*,
   251 F. Supp. 3d 644 (S.D.N.Y. 2017) .................................................................... 17

iv

*Valentini v. Grp. Health Inc.*,
No. 20 Civ. 9526 (JPC), 2021 WL 6113991 (S.D.N.Y. Dec. 27, 2021) ................................ 16

*Wynn v. Topco Assocs., LLC*,
No. 19-CV-11104 (RA), 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) .................................... 17

**Statutes**

15 Okla. St. Ann. §753(20) ................................................................................................ 21

6 Del. Code § 2513(a) ........................................................................................................ 19

815 ILCS § 505/2 ................................................................................................................ 20

9 Vt. Stat. Ann. § 2453(a) .................................................................................................. 22

Ala. Code § 8-19-5(27) ...................................................................................................... 19

Ala. Code Ann. § 8-19-10(f) .............................................................................................. 22

Alaska Stat. § 45.50.471(b)(11) ......................................................................................... 19

Ark. Code Ann. § 4-88-107(a)(10) ..................................................................................... 19

Ark. Code Ann. § 4-88-113 (f)(1)(B) .................................................................................. 22

Cal. Bus. & Prof. Code § 17200 ......................................................................................... 19

Conn. Gen Stat. § 42-110b(a) ............................................................................................ 19

D.C. Code §§ 28-3904(e) ................................................................................................... 19

D.C. Code §§ 28-3904(f) .................................................................................................... 19

Fed. R. Civ. P. 9(b) .............................................................................................................. 1

Fed .R. Civ. P. 10(c) ............................................................................................................. 6

Fed. R. Civ. P. 11(b)(3) ........................................................................................................ 2

Fed. R. Civ. P. 12(b) ............................................................................................................. 1

Fla. Stat. § 501.204(1) ....................................................................................................... 19

Ga. Code Ann. § 10-1-393(a) ............................................................................................ 19

Ga. Code Ann. § 10-1-399(a) .................................................................................... 22

Haw. Rev. Stat. § 480-2(a) ..................................................................................... 20

Haw. Rev. Stat. § 480-13.3(a) ................................................................................. 22

Ind. Code Ann. § 24-5-0.5-3(a) ............................................................................... 20

Iowa Code Ann. § 714h.3(1) ................................................................................... 20

Kan. Stat. Ann. §§ 50-626(b) .................................................................................. 20

Kan. Stat. Ann. §§ 50-636(b) .................................................................................. 20

La. Rev. Stat. § 51:1405(A) ..................................................................................... 20

La. Rev. Stat. § 51:1409(A) ..................................................................................... 23

Mass. Gen. Laws. Ch. Ch. 93a § 2(a) ..................................................................... 20

Md. Code Com. Law §§ 13-101 .............................................................................. 20

Md. Code Com. Law §§ 13-301 .............................................................................. 20

Mich. Comp. Laws § 445.903(1)(s) ......................................................................... 20

Minn. Stat. § 325f.69(1) ......................................................................................... 20

Mont. Code Ann. § 30-14-103 ................................................................................ 20

Mont. Code Ann. § 30-14-133 ................................................................................ 23

N.C. Gen Stat. § 75-1.1(a) ...................................................................................... 21

N.D. Cent. Code § 51-15-02 ................................................................................... 21

N.H. Rev. Stat. Ann. § 358-A:2 .............................................................................. 21

N.J. Stat. Ann. § 56:8-2 ........................................................................................... 21

N.M. Stat. Ann. § 57-12-3 ....................................................................................... 21

N.Y.G.B.L. §§ 349 ............................................................................................ 17, 18

N.Y.G.B.L. §§ 350 ................................................................................................... 18

Neb. Rev. Stat. § 59-1602 ...................................................................................... 21

Nev. Rev. Stat. § 598.0915(15) .............................................................................. 21

Ohio Rev. Code § 1345.02(A) ................................................................................. 21

Ore. Rev. Stat. § 646.607(1) ................................................................................... 21

Rev. Code Wash. Ann. § 19.86.020 ........................................................................ 22

S.C. Code Ann. § 39-5-20(a) .................................................................................. 21

S.C. Code Ann. § 39-5-140(a) ................................................................................ 23

S.D. Codified Laws § 37-24-6(1) ............................................................................ 21

Tenn. Code Ann. § 47-18-104(a) ............................................................................ 21

Tenn. Code Ann. § 47-18-109(a)(1) ....................................................................... 23

Tex. Bus. & Com. Code § 17.46(a) ......................................................................... 22

Utah Code Ann. § 13-11-4(1) ................................................................................. 22

Va. Code § 59.1-200(14) ......................................................................................... 22

Wis. Stat. § 100.18(1) ............................................................................................. 22

Wyo. Stat. § 40-12-105(a)(xv) ................................................................................ 22

**Other Authorities**

PwC, *Not-for-profit entities guide,* 6.4 The basic accounting for contributions (May 27, 2020),
   https://viewpoint.pwc.com/dt/us/en/pwc/accounting_guides/not-for-profit-entities/Not-for-
   profit-entities/Nfp06_1/64_The_basic_accounting_5.html ...................................... 9

Warren Gorham & Lamont, *Nonprofit Controller's Manual,*
   *Part B: Accounting and Taxation Issues, B2: Accounting for Contributions,*
   WGL NPC Man B2 (2022) ..................................................................................... 9

Defendants CVS Health Corporation and CVS Pharmacy, Inc. ("CVS"), by their counsel, Zukerman Gore Brandeis & Crossman, LLP, submit this memorandum of law in support of their motion to dismiss the Amended Complaint filed by Plaintiff Kevin McCabe for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).[1]

## PRELIMINARY STATEMENT

In April 2021, CVS and the American Diabetes Association (the "ADA") agreed to enter into a multifaceted joint campaign to fight diabetes, including a pledge from CVS to raise millions of dollars on behalf of the ADA through yearly fundraising campaigns (the "ADA Agreement"). As demonstrated below, this case exemplifies the maxim that no good deed goes unpunished.

Plaintiff purports to bring a putative class action accusing CVS of fraud and deception in its fundraising efforts for the ADA. Although his pleading is larded with irrelevant and contradictory allegations, the entire Amended Complaint is premised on what can charitably be characterized as an affirmative disregard of the terms of the ADA Agreement. According to Plaintiff, by signing the ADA Agreement, CVS assumed a $10 million debt to the ADA, which Plaintiff defines in his pleading as the "CVS Debt." Plaintiff next alleges that when CVS collected donations to the ADA from its customers and transmitted those donations to the ADA, CVS was in fact paying off its own purported CVS Debt. Plaintiff thus asserts fraud and breach of contract under the laws of every state and the District of Columbia, as well as violations of the consumer protection laws of 40 states and the District of Columbia.

Plaintiff's claims are contradicted by the ADA Agreement, which controls. As is plain from the agreement, CVS has no debt to the ADA. Rather, CVS agreed to fundraise from its customers and turn over the donations to the ADA. CVS further promised that at the conclusion

---

[1] Plaintiff filed an Amended Complaint while a motion to dismiss the original complaint was still pending and being briefed by the parties. The Amended Complaint added as a defendant CVS Pharmacy, Inc., which has not been served with the Summons and the Amended Complaint, and failed to remove CVS Health Corporation, which is not a signatory to the agreement at issue and not a proper party.

of three-plus years of fundraising, CVS would (if necessary) make up the difference between the cumulative customer donations and $10 million. Obviously, upon signing, CVS did not assume an unconditional $10 million debt to the ADA. As demonstrated below, this common sense understanding of the CVS pledge is confirmed under the common law as well as the accounting rules that apply to charitable commitments.

Plaintiff did not have the ADA Agreement when he filed his original complaint in May 2022, although Plaintiff's counsel – using an alias that did not identify him as an attorney – communicated with CVS and obtained pertinent information about the ADA Agreement prior to filing the complaint. (*See* Dkt. No. 11, at pp. 1-2 and Exh. A). CVS served its motion to dismiss the complaint on September 1, 2022, and thereby supplied the ADA Agreement to Plaintiff and his counsel. Rather than accept the plain language of the agreement, Plaintiff filed an amended complaint two weeks later.

In accordance with Fed. R. Civ. P. 11(b)(3), Plaintiff's counsel has certified that "the factual contentions [in the Amended Complaint] have evidentiary support." But as the ADA Agreement in his possession unquestionably demonstrates, the operative factual contention of wrongdoing are without evidentiary support. For the reasons below, this action should be dismissed with prejudice.[2]

## STATEMENT OF FACTS

***The ADA Agreement.***[3]

On April 13, 2021, CVS Pharmacy, Inc. and the ADA entered into a Corporate Sponsorship Agreement (the "ADA Agreement," as amended October 28, 2021), which provides

---

[2]    This is not the first time Plaintiff – represented by the same counsel – has filed a class action complaint alleging unfounded contractual obligations and consumer protection violations relating to a charitable campaign. On August 29, 2016, Judge Allyne R. Ross of the Eastern District of New York issued a decision dismissing Plaintiff's amended class action complaint against ConAgra Foods, Inc. for failure to state a claim, which was subsequently affirmed by the Second Circuit. *See McCabe v. ConAgra Foods, Inc.*, No. 16-CV-93 (ARR) (SLT), 2016 WL 8943310 (E.D.N.Y. Aug. 29, 2016), *aff'd*, 681 Fed. App'x 82 (2d Cir. 2017).

[3]    The ADA Agreement and its October 28, 2021 amendment are attached to the Amended Complaint as Exhibits A and B, respectively, and are properly considered on this motion to dismiss. *See* Point I, *infra*.

that the "purpose of th[e] Agreement is to benefit the ADA and advance its non-profit mission to prevent and cure diabetes and to improve the lives of all people affected by diabetes through a Project Power Strategic Partnership." (AC, Exh. A at 1 § 1). The ADA Agreement has three stated goals: (1) deliver experiences to help those with diabetes control their illness and prevent diabetes; (2) help educate those with diabetes by getting health screenings; and (3) fund research on health disparities that drive the diabetic epidemic. (*Id*. at 8). To that end, CVS committed to leverage its national presence to provide risk-specific educational materials to the public, drive diabetes awareness through CVS in-store radio promotion and provide other corporate communications resources to benefit diabetes awareness. (*See generally,* AC, Exh. A).

As part of the initiative to help fund research, the ADA Agreement provides that CVS would fundraise at its stores; forward the customer donations to the ADA; and then in April 2024, only in the event the cumulative customer donations fail to reach $10 million, CVS would cover the shortfall:

> [CVS] will *offer opportunities to its customers to make a donation to the ADA*. [CVS] commits to *raise for the ADA a minimum of $10,000,000* for the Term of this Agreement. [CVS] agrees to make annual payments of funds raised during each calendar year of this Agreement by December 31, beginning in 2021, as set forth below.

> In the event the total funds raised through in-store fundraising and cause marketing and donated to the ADA from the Effective Date through December 31, 2023 total less than $10,000,000, [CVS] agrees to either (i) donate funds to the ADA equal to the difference in the funds donated and $10,000,000, or (ii) [CVS] may, in its sole discretion, elect to conduct additional consumer campaigns prior to April [xx], 2024. Should a difference still remain due after the additional consumer campaigns, if any, are completed, [CVS] agrees to donate funds to the ADA equal to the difference between the total funds donated and $10,000,000. *Any amounts raised over $10,000,000 minimum will be donated to the ADA as well.*

> [CVS] may direct any funds raised in excess of $10 million over the Term of the Agreement to support other initiatives at [CVS's] discretion, so long as such other initiatives advance the ADA's mission. Such discretion shall be provided in writing by [CVS] to the ADA and shall be subject to the approval of the ADA, such approval not to be unreasonably withheld.

> **Payment Due: December 31, 2021**: Funds raised during 2021 consumer campaign

> **Payment Due: December 31, 2022:** Funds raised during 2022 consumer campaign
>
> **Payment Due: December 31**, **2023:** Funds raised during 2023 consumer campaign.
>
> **Final Payment Due:** April 30, 2024: *Funds raised from any additional consumer campaigns plus, in the event that the total funds raised is less than $10,000,000, an amount equal to the difference between the total funds raised and $10,000,000.*

(Amended Complaint "AC," Exh. A at 18 and Exh. B at 1 § 1) (italicize added; bold in original).

### The Amended Complaint.

The Amended Complaint alleges that between November 2, 2021, through November 27, 2021, CVS conducted a campaign in which customers were asked if they wished to make a donation to the ADA (the "Campaign"). (AC ¶ 13). According to Amended Complaint, the request was presented as part of the checkout process, on checkout screens, pursuant to which customers could opt to make a donation, above and beyond the price of their purchase, by tapping one of several boxes on the checkout screen, each of which contained a pre-selected amount, or to decline to make a donation by tapping a box stating "no." (AC ¶ 13). The request for donations presented to customers at checkout is defined in the Amended Complaint as the "Checkout Message." (AC ¶ 13).

The Amended Complaint alleges that the Checkout Message was the only term of the Campaign provided to customers and that it "had only one reasonable understanding: that CVS was merely collecting Campaign Donations and forwarding them to the ADA." (AC ¶¶ 15-16).

The Amended Complaint further alleges that CVS's "[g]uarantee" (AC ¶ 24) under the ADA Agreement "constituted a debt of $10 million from CVS to the ADA (the 'CVS Debt')." (AC ¶ 26). Thus, according to Plaintiff, by entering into the ADA Agreement, "CVS assumed a $10 million debt to the ADA." (Dkt. 15 at p. 1). Relying entirely upon the "CVS Debt" allegation, the Amended Complaint concludes that "the Checkout Message was false, deceptive and misleading because CVS was not merely collecting Campaign Donation and forwarding them to the ADA, but was, in fact, using Campaign Donations towards the satisfaction of the CVS Debt." (AC ¶ 33).

The Amended Complaint asserts three claims for relief on behalf of the putative class of CVS customers who made Campaign Donations during the November 2021 Campaign: common-law fraud and breach of contract under the laws of each state and the District of Columbia; and violations of the consumer protection statutes of 40 states and the District of Columbia.[4] The only named Plaintiff is Kevin McCabe, who is a New York resident and allegedly made a Campaign Donation at a CVS store located in New York. (AC ¶¶ 6, 69).

## ARGUMENT

### I. STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). That tenet, however, does not apply to legal conclusions. *See Iqbal,* 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"[A] Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed .R. Civ. P. 10(c), or any document incorporated in it by reference." *Goldman v. Belden*, 754 F.2d 1059, 1065-66 (2d Cir.

---

[4] The 40 states are: Alabama; Alaska; Arkansas; California; Connecticut; Delaware; Florida; Georgia; Hawaii; Illinois; Indiana; Iowa; Kansas; Louisiana; Maryland; Massachusetts; Michigan; Minnesota; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; New York; North Carolina; North Dakota; Ohio; Oklahoma; Oregon; South Carolina; South Dakota; Tennessee; Texas; Utah; Vermont; Virginia; Washington; Wisconsin; Wyoming.

1985); *accord* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the contents of an incorporated or integral document contradicts a pleaded fact, the document controls. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (assuming truth of allegations "unless contradicted by . . . documentary evidence," including documents "integral" to the complaint); *Poindexter v. EMI Record Grp. Inc*., No. 11 Civ. 559(LTS)(JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true").

Here, the ADA Agreement – which sets forth CVS's obligations to the ADA under the Campaign – is attached to the Amended Complaint and is integral to its allegations. Because the ADA Agreement's terms are inconsistent with the allegations in the Amended Complaint, the ADA Agreement's terms control.

As shown below, the Amended Complaint fails to state a viable claim under these well-established standards.

## II.    THE FUNDAMENTAL PREMISE OF THE AMENDED COMPLAINT IS WRONG AS A MATTER OF LAW, ACCOUNTING PRINCIPLES, AND COMMON SENSE

The Amended Complaint relies entirely on the "CVS Debt" allegation, an erroneous legal conclusion (rather than an allegation of fact), which Plaintiff repeats throughout his pleading. Because that allegation is (i) demonstrably false, (ii) contradicted by the written agreement at issue, and (iii) entitled to no presumption of truth, the entire house of cards upon which the Amended Complaint is built collapses. *Iqbal,* 556 U.S. at 678; *L-7 Designs*, 647 F.3d at 422.

### A.  CVS AGREED TO FUNDRAISE

It is axiomatic that "[t]he fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties." *Lockheed Martin Corp. v. Retail Holdings, N.V.,* 639

F.3d 63, 69 (2d Cir. 2011). "When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Id*.

The ADA Agreement is clear and unambiguous as to CVS's contractual obligations. Pursuant to the agreement, CVS agreed to *fundraise* on behalf of the ADA over the course of three years or longer. (AC, Exh. A at 18). Specifically, CVS agreed to "*raise . . . a minimum of $10,000,000 for the Term of this Agreement*" by "offer[ing] opportunities to its *customers to make a donation* to the ADA." (AC, Exh. A at 18) (emphasis added).[5] CVS agreed to turn over to the ADA "the funds raised during the 2021 campaign" on December 31, 2021, and to make two additional payments for the funds raised during the 2022 Campaign and 2023 Campaign on December 31, 2022, and December 31, 2023, respectively. (AC, Exh. A at 18). In the event that customer donations do not reach $10 million by the end of 2023, CVS retained the right to conduct additional consumer fundraising campaigns through April 2024. (*Id*.) Finally, CVS further pledged that in the event its fundraising efforts do not raise $10 million by April 2024, CVS would donate the difference between the total funds donated by its customers and $10 million (the "Potential Shortfall"). (*Id*.). With eighteen months of fundraising remaining, CVS has no obligation to pay anything, much less $10 million, to the ADA.

### B. UNLIKE A FIXED OBLIGATION, A CONDITIONAL PROMISE IS NOT ENFORCEABLE UNLESS AND UNTIL THE CONDITION IS MET

The Amended Complaint incorrectly alleges that, as of the ADA Agreement's effective date, CVS immediately assumed the "CVS Debt." (AC ¶¶ 1, 24-26). But that allegation is contrary to the key terms of the ADA Agreement, which expressly set forth a condition precedent that must be satisfied before any CVS obligation to donate would arise.

"A condition precedent is 'an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.'" *MHR Cap. Partners LP v. Presstek Inc.*, 912 N.E.2d 43, 47, 48 (N.Y. 2009) (quoting

---

[5] The "Term" of the agreement is defined as the period between April 13, 2021 to April 12, 2024. (AC, Exh. A at 3 § 13).

*Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415 (N.Y. 1995)) (holding

stock purchase agreement contained a condition precedent and that defendant "had no duty to

proceed with the stock purchase agreement due to the nonperformance of [the] express

condition"). "Express conditions must be literally performed; substantial performance will not

suffice." *MHR Cap. Partners*, 912 N.E.2d at 47.

"[L]inguistic conventions of condition – such as 'if,' 'on condition that,' 'provided that,'

'***in the event that***,' and 'subject to []' –can 'make plain' a condition precedent." *Sohm v.*

*Scholastic Inc*., 959 F.3d 39, 46 (2d Cir. 2020) (emphasis added) (quoting *Bank of N.Y. Mellon*

*Tr. Co., N.A. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 305 (2d Cir. 2016)); *accord*

*Sutton v. E & B Giftware LLC*, No. 503296/13, 2013 WL 6583960, at *3 (Sup. Ct., Kings

County Dec. 3, 2013) (stating "the use of the language 'in the event that . . .' is a form of

construction frequently used to establish a condition precedent" and holding that such language

in operative agreement created an express condition precedent) (emphasis added).

In three separate places, the ADA Agreement uses express language that "makes plain"

that CVS's obligation to donate is conditional, and does not arise unless there is a Potential

Shortfall:

- "***In the event*** the total funds raised through in-store fundraising and cause marketing and donated to the ADA from the Effective Date through December 31, 2023 total less than $10,000,000, [CVS] agrees to either (i) donate funds to the ADA equal to the difference in the funds donated and $10,000,000, or (ii) [CVS] may, in its sole discretion, elect to conduct additional consumer campaigns prior to April [xx], 2024."

- "***Should a difference still remain*** due after the additional consumer campaigns, ***if any***, are completed, [CVS] agrees to donate funds to the ADA equal to the difference between the total funds donated and $10,000,000."

- "Final Payment Due: April 30, 2024: Funds raised from any additional consumer campaigns plus**, *in the event that*** the total funds raised is less than $10,000,000, an amount equal to the difference between the total funds raised and $10,000,000."

(AC, Exh. A at 18) (emphasis added). Thus, pursuant to the unmistakable language in the ADA

Agreement, CVS's pledge to donate is conditional. Indeed, the Amended Complaint does not

allege that the condition precedent has been satisfied here, nor could it because under the plain terms of the agreement, the condition precedent – *i.e.*, the Potential Shortfall – cannot be determined until December 31, 2023, at the earliest; and even then, the agreement gives CVS four additional months to solicit additional donations to cover the Potential Shortfall.

Plaintiff claims that CVS improperly used Campaign Donations to satisfy its purported debt (AC ¶¶ 29-32), but no such debt exists. CVS's principal financial responsibility in the Campaign is to fundraise, *not* to donate. Thus, the ADA Agreement expressly permits – and indeed requires – that CVS's conditional promise be reduced by all amounts donated by its customers.

### C. UNDER APPLICABLE ACCOUNTING RULES, CVS HAS NO OBLIGATION UNLESS AND UNTIL THE TRIGGERING EVENT OCCURS

The Nonprofit Controller's Manual (the "Manual") explains that pursuant to the Financial Accounting Standards Board Accounting Standards Codification ("FASB ASC"), a "'promise to give,' sometimes called a 'pledge,' is defined as '[a] written or oral agreement to contribute cash or assets to another entity." Warren Gorham & Lamont, *Nonprofit Controller's Manual, Part B: Accounting and Taxation Issues, B2: Accounting for Contributions*, WGL NPC Man B2 (2022), at B2.02(1) (quoting FASB ASC 958-205-20, Glossary).[6] The Manual states that the FASB ASC "goes on to say that a promise to give may be either conditional or unconditional:"

> A conditional promise to give is one that stipulates that a specific and uncertain future event must occur before the donor makes the promised contribution. Implicit in the condition is the understanding that if the specified event does not occur, the donor *is not bound* to make the promised contribution.

*Id.*, at B2.02(1) and (1)(a) (emphasis added).

---

[6] *See also* PwC, *Not-for-profit entities guide,* 6.4 The basic accounting for contributions (May 27, 2020), https://viewpoint.pwc.com/dt/us/en/pwc/accounting_guides/not-for-profit-entities/Not-for-profit-entities/Nfp06_1/64_The_basic_accounting_5.html. For the court's convenience, all of the authorities cited in this memorandum are hyperlinked.

The CVS pledge to cover a Potential Shortfall is contingent upon the occurrence of a future event, *i.e.*, the failure to reach $10 million in customer donations over a period of ending in 2024. (AC, Exh. A p. 18). If that event does not occur, meaning there is no shortfall because customer donations reach $10 million or more, then CVS is not bound to make the promised contribution. Consequently, when CVS entered into the ADA Agreement, it did not incur a "CVS Debt."

### III. WITHOUT THE ERRONEOUS CVS DEBT ALLEGATION, PLAINTIFF'S CLAIM OF FRAUD FAILS

To state a claim of fraud under New York law, plaintiff must allege "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) .[7]

Rule 9(b) requires that claims sounding in fraud be alleged with particularity. That ordinarily requires a complaint alleging fraud to: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) . "[E]ven if the alleged fraud consisted of omissions, making plaintiff 'unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and *the manner in which they misled the plaintiff*, and (4) *what defendant obtained through the fraud*.'" *Richmond v. Nat'l Grid*, No. 12–CV–1319 (DLI)(VMS), 2013 WL 1338870, at *5 (E.D.N.Y. Mar. 29, 2013) (emphasis added).

---

[7]    Because the sole named Plaintiff resides in New York and the only conduct alleged to have harmed the named Plaintiff occurred in New York, the Amended Complaint appears to only assert common law and statutory claims arising under New York by the named Plaintiff. Thus, Defendants' Memorandum of Law cites principally to New York law. If the named Plaintiff's claims are dismissed, the out-of-state claims must also be dismissed for lack of Article III standing. *See* Point V.B, *infra*.

Moreover, Rule 9(b) permits a plaintiff to allege scienter generally, but the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a *strong inference of fraudulent intent*." *United States ex rel. Tessler v. City of N.Y.*, 712 F. App'x 27, 29 (2d Cir. 2017) (summary order) (emphasis added) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)). Among other things, the "9(b) requirement serves to . . . protect defendants' reputations and good will from frivolous or baseless claims." *MacSwan v. Merck & Co., Inc*., Case No. 1:20-cv-1661, 2022 WL 1415031, at *10 (W.D.N.Y. May 4, 2022).

## A. THE COMPLAINT FAILS TO ALLEGE A MISSTATEMENT OF MATERIAL FACT

As demonstrated in Point II.B, *supra*, to the extent the ADA Agreement can be interpreted to contain an obligation by CVS to "donate" to the ADA as part of the Campaign, it is a conditional obligation that only arises on a date in the future under limited (and manifestly unlikely) circumstances. [8] CVS's alleged failure to disclose an obligation to donate that does not currently exist – and likely may never exist – cannot sustain a claim for fraud. *N.Y. Fruit Auction Corp. v. City of N.Y.,* 439 N.Y.S.2d 648, 652 (N.Y. App. Div. 1st Dep't 1981), *aff'd,* 439 N.E.2d 356 (N.Y. 1982) ("[A] misrepresentation as to a future event that may or may not occur, can form no basis of actionable fraud . . ..").

The Amended Complaint alleges that "the *only* term of the Campaign that CVS [Health] provided to customers" was a representation on the checkout screen that the customer could make a donation to the ADA and "that CVS was merely collecting Campaign Donations and forwarding them to the ADA." (AC ¶¶ 15-16) (emphasis added). As the Complaint confirms, CVS (i) solicited from its customers donations to the ADA, and (ii) forwarded the donations to the ADA. (AC ¶ 33). There was no misstatement. Rather, what CVS represented to its customers is exactly what occurred: customers who wished to donate to the ADA in fact donated

---

[8] Indeed, the more that customers donate during the Campaign, the greater the likelihood that the ultimate amount raised will exceed the $10 million floor, with all such donations turned over to the ADA to be used to support the ADA's mission. (AC, Exh. A at 18 and Exh. B at 1 § 1).

to the ADA and nothing more.  (*Id.*).  Thus, Plaintiff alleges that he believed his donation would go to the ADA, which of course is exactly what happened.  (AC ¶ 69).  Plaintiff further alleges that he would not have donated as much or at all if he knew it would not be given to the ADA, but it was.  (AC ¶ 70).

The Amended Complaint contains several allegations regarding collateral matters that bring Plaintiff no closer to stating a claim for fraud:

### 1.   The Amendment to the ADA Agreement

Citing an amendment to the ADA Agreement, Plaintiff alleges that "CVS was no longer required to give *any* [donations over $10 million] to the ADA." (AC ¶ 1) (emphasis in original).[9] To the contrary, both before and after the Amendment, CVS was and is required to give all donations it receives to the ADA.  The text of the ADA Agreement immediately preceding the amendment provides: "Any amounts raised over $10,000,000 minimum *will be donated to the ADA* as well." (AC, Exh. A p. 18) (emphasis added).  And the amendment makes clear that except as expressly set forth therein, it "shall not alter, modify, amend or in any way affect the terms, conditions, obligations, covenants or agreements contained in the [ADA] Agreement, all of which are ratified and affirmed in all respects and shall continue in full force and effect." (AC, Exh. B at § 4).  Plaintiff concedes – as he must – that "[t]he fact that the amendment *added to*, as opposed to having *replaced*, the language of the original CVS-ADA Agreement supports CVS's claim." (Dkt. 15 at p. 2) (emphasis in original).  The agreement, as amended, plainly requires that all donations be forwarded to the ADA.

In any event, the Amended Complaint does not allege that the amendment has been triggered.  (Indeed, Plaintiff acknowledges that CVS has "collect[ed] Campaign Donations and forward[ed] them to the ADA . . .." (AC ¶ 33).)  Plaintiff merely alleges that by the amendment, CVS "was not committing" to forward donations in the future.  (AC ¶ 50).   In other words,

---

[9]     The amendment permitted CVS to "direct any funds raised in excess of $10,000,000 . . . to support other initiatives at [CVS's] direction, *so long as such other initiatives advance the ADA's mission*," subject to the ADA's approval. (AC, Exh. B at § 1) (emphasis added).

Plaintiff seeks relief for alleged harm that has not occurred (nor will it, by the express terms of the ADA Agreement).

## 2. The Press Release

Plaintiff also miscasts a press release issued by CVS in November 2021 relating to the Campaign and argues that in the release, CVS falsely "implied" that its purported "$10 million commitment was separate, apart, and independent of Campaign Donations." (AC ¶¶ 51-53). Not so.[10] Regardless, the press release is irrelevant because the fraud allegations are based solely upon the (wholly accurate) Checkout Message to customers soliciting ADA donations. The Amended Complaint does not allege that customers relied upon the press release in making donations. Even if the press release were relevant, it does not support Plaintiff's claims.

## 3. The Campaign Donations Are Tax Deductible

Plaintiff alleges that Campaign Donation receipts provided to customers were false and misleading because they stated that 100% of the donations would go to the ADA, and "implied" that Campaign Donations were tax-deductible. (AC ¶¶ 56-58). According to Plaintiff, "[t]he portion of a Campaign Donation that was used toward the satisfaction of the CVS Debt was not tax deductible." (AC ¶ 59). Again, there is no CVS Debt, and all the customer donations were paid to the ADA. Plaintiff further alleges that the "portion of the Campaign Donation that is not received by the ADA but is instead used by CVS with the approval of the ADA" is not tax deductible. (AC ¶ 60). As explained above, the ADA Agreement does not permit CVS to retain any portion of the donations, and they were indeed tax deductible.

---

[10]     The press release accurately announced the partnership between the ADA and CVS, which had many objectives (not just fundraising). (*See* Statement of Facts, p. 3, *supra*). Among them, the press release states that CVS had pledged $10 million to the ADA over three years, and that CVS would host an in-store fundraising campaign to give customers an opportunity to support the ADA. (AC, Exh. C). Thus, the press release is consistent with the Checkout Message in that customer donations were made to the ADA through CVS's in-store fundraising campaign. (AC ¶ 13).

4. The Massachusetts Alleged Filing Requirement

Plaintiff alleges that the ADA Agreement should have been publicly filed *by the nonparty ADA* in Massachusetts. (AC ¶¶ 62-68). CVS had no such filing obligation and, indeed, the Amended Complaint concedes that the law "applies only to the ADA, *i.e.*, not to CVS." (AC ¶ 66). Assuming *arguendo* that the ADA was obligated to file the ADA Agreement, the allegations are irrelevant. They have no relationship to Plaintiff's claim that he was defrauded when he donated to the ADA during the checkout process at a CVS retail store.

*          *          *

Because the fraud claim fails to allege a plausible material misstatement, it should be dismissed. *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 422 (E.D.N.Y. 2017) (dismissing fraud claims where complaint failed to "identify any statements made by defendant that were fraudulent"); *Perez v. B. Braun Med., Inc.*, No.17 Civ. 8512 (LLS), 2018 WL 2316334, at *6 (S.D.N.Y. May 9, 2018) (dismissing complaint where plaintiff failed to explain why statements were fraudulent).

## B. TO THE EXTENT PLAINTIFF'S FRAUD CLAIM IS BASED UPON AN ALLEGED OMISSION, THE AMENDED COMPLAINT FAILS TO PLEAD A MATERIAL OMISSION OR A DUTY TO DISCLOSE

In the absence of a material misstatement, Plaintiff's fraud claims rests upon the allegation that the Checkout Message was false and misleading because it failed to disclose to customers that their donations would be counted towards the satisfaction of the "CVS Debt." (AC ¶ 33). Plaintiff's claim is therefore grounded in a theory of fraud by omission. But there was no omission because the purported CVS Debt does not exist.

Moreover, "[f]raud by omission, at its core, requires a showing (1) that plaintiff and defendant have a relationship giving rise to a duty to disclose, and (2) that the concealed information is material." *Olson v. Major League Baseball*, 29 F.4th 59, 80 (2d Cir. 2022) (applying Texas, Massachusetts, California law); *accord Beach v. Citigroup Alt.,* No. 12 Civ. 7717(PKC), 2014 WL 904650, at *20 (S.D.N.Y. Mar. 7, 2014) ("In order to sustain a claim of

14

fraudulent concealment under New York law, a plaintiff must show that the defendant had a duty to disclose material information").

Thus, under New York law, "[w]here fraud is allegedly perpetrated by omission, the plaintiff must . . . allege that the [d]efendant . . . had a duty to disclose the relevant fact." *42-50 21st St. Realty LLC v. First Cent. Sav. Bank*, No. 20-CV-5370 (RPK) (RLM), 2022 WL 1004187, at \*4, \*6 (E.D.N.Y. April 4, 2022) (dismissing fraud claims where complaint failed to adequately plead a duty to disclose) (applying New York Law). A duty to disclose may arise where the parties have a confidential or fiduciary relationship. *SNS Bank, N. V. v. Citibank, N.A.*,777 N.Y.S.2d 62, 66 (N.Y. App. Div. 1st Dep't 2004) ("an omission does not constitute fraud unless there is a fiduciary relationship between the parties"); *Elghanian v. Harvey*, 671 N.Y.S.2d 266, 266 (N.Y. App. Div. 1st Dep't 1998) ("Nor do any of the alleged omissions support plaintiff's claim, inasmuch as there was no fiduciary relationship giving rise to a duty to speak"); *Mobil Oil Corp. v. Joshi*, 609 N.Y.S.2d 214, 215 (N.Y. App. Div. 1st Dep't 1994) ("in the absence of a confidential or fiduciary relationship between Preferred and Mobil imposing a duty to disclose, Preferred's mere silence, without some act which deceived Mobil, cannot constitute a concealment that is actionable as fraud").

Here, the Amended Complaint nowhere alleges a fiduciary or confidential relationship between the parties, or any other facts that would give rise to a duty to disclose. Plaintiff has alleged nothing more than an ordinary arms-length business relationship. This does not suffice. *ESRT 250 W. 57th St., L.L.C. v. 13D/W. 57th LLC*, 50 N.Y.S.3d 363, 364 (N.Y. App. Div. 1st Dep't 2017) (dismissing fraud counterclaim because "the landlord made no actionable misstatement, and it had no duty to speak, given the arm's length nature of the landlord-tenant relationship"); *S'holder Representative Servs. LLC v. Sandoz Inc*., No. 653506/2013, 2015 WL 1209358, at \*6–7 (Sup. Ct., N.Y. County Mar. 16, 2015) (dismissing fraud claim based on alleged omission because plaintiff failed to allege "something akin to a fiduciary duty between the parties" and instead, "the Complaint allege[d] facts consistent with an arm's length business relationship"); *see also Grumman Allied Indus., Inc. v. Rohr Indus., Inc*., 748 F.2d 729, 739 (2d

15

Cir. 1984) (holding an "ordinary arms-length business relationship" did not give rise to a duty to disclose and dismissing fraudulent concealment claim on summary judgment).

As such, Plaintiff has failed to plead any actionable omission by the CVS that could give rise to a fraud by omission claim, and the claim should therefore be dismissed as a matter of law. *F.D.I.C. v. U.S. Mortg. Corp.*, 132 F. Supp. 3d 369, 388–89 (E.D.N.Y. 2015) (dismissing fraud by omission claim where facts alleged in Complaint failed to establish a duty to disclose); *Valentini v. Grp. Health Inc.*, No. 20 Civ. 9526 (JPC), 2021 WL 6113991, at *5 (S.D.N.Y. Dec. 27, 2021) (dismissing fraud by omission claim where plaintiff failed to allege a fiduciary duty requiring disclosure).

### IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

In New York, "the elements of a breach of contract claim are (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012) (citations omitted). The allegations set forth in the Amended Complaint fail to satisfy these requisite elements.

Plaintiff asserts a nationwide breach of contract claim without alleging the existence, terms, or parties to the contract that was allegedly breached. (AC ¶¶ 81-82). Assuming for the sake of argument that Plaintiff will argue that CVS and its customers formed a contract that the donations made by the customers would be paid to the ADA, then the breach claim fails. As Plaintiff elsewhere admits, CVS turned over its customers' donations to the ADA following the November 2021 fundraising campaign (AC ¶ 33), so the alleged contract was not breached. *Doyle v. Mastercard Int'l Inc.*, 700 Fed. App'x 22 (2d Cir. 2017) (dismissing breach of contract claim against Mastercard for failure to state a breach where, in connection with a "Stand Up To Cancer" charitable program, Mastercard solicited donations from customers and agreed to make donation to "Stand Up to Cancer" until a scheduled end date arrived or a $4 million maximum donation was reached, and complaint failed to allege Mastercard violated those terms).

## V. WITHOUT THE ERRONEOUS CVS DEBT ALLEGATION, PLAINTIFF'S CLAIMS FOR VIOLATION OF CONSUMER PROTECTION LAWS FAIL

The Amended Complaint's third claim asserts violations of the consumer protection statutes of 40 states and the District of Columbia. "To the extent these consumer protection claims are premised on allegations of fraudulent conduct, they must be pleaded with particularity under Rule 9(b) ." *Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 682 (S.D.N.Y. 2017) (applying the heightened fraud pleading standard to California consumer protection statute). Because all of Plaintiff's claims are based on the same alleged "false, deceptive, and misleading" statements made by CVS in the Checkout Message, they are "premised on" allegations of fraud and therefore must be pleaded with heightened particularity. (AC ¶¶ 33, 50).

Each of Plaintiff's consumer protection law claims rely on the allegation that CVS has taken for itself customer donations to pay the purported CVS Debt. But all contributions have been transmitted to the ADA, which the Amended Complaint acknowledges. (AC ¶ 33). And there is no CVS Debt. (*See supra*, Point II). Thus, as demonstrated below, Plaintiff's Amended Complaint fails to state a claim for violation of consumer protection laws.

### A. PLAINTIFF DOES NOT ADEQUATELY PLEAD HIS NYGBL CLAIM

Plaintiff alleges violations of New York General Business Law ("NYGBL") Section 349. (AC ¶¶ 176-179). "Section 349 prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce.'" *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (quoting NYGBL § 349). To state a claim under Section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Gilleo v. JM Smucker Co.*, No. 20-CV-02519 (PMH), 2021 WL 4341056, at *5 (S.D.N.Y. Sep. 23, 2021) (quoting *Wynn*, 2021 WL 168541, at *2).

"To survive a motion to dismiss, 'plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers.'" *Id*. Rather, a plaintiff must "plausibly allege that a significant portion of the general consuming public or of targeted

customers, acting reasonably in the circumstances, could be misled." *Id*. "[I]t is 'well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.'" *Id*. Thus, Section 349 requires a finding that "a reasonable consumer in like circumstances would consider the misrepresentation material." *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 189–90 (E.D.N.Y. 2018) (emphasis in original).

Plaintiff's claim under NYGBL Section 349 suffers from the same fatal flaws as its common law fraud claim. Specifically, as explained in Section III, *supra*, the Amended Complaint fails to adequately plead under Rule 9(b) how the alleged omissions were fraudulent or misled the plaintiff. Accordingly, the consumer protection claim under NYBGL should be dismissed. *Gilleo*, 2021 WL 4341056, at *7 ("Because plaintiffs have failed to sufficiently plead that the Product's front label is 'materially misleading,' Plaintiffs' claims under NYGBL §§ 349 and 350 are dismissed"); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) ("Because the Court finds that the Defendant's conduct would not mislead a reasonable consumer, the Court grant's Defendant's motion to dismiss plaintiff's claims brought under N.Y.G.B.L. §§ 349 and 350").

### B. Plaintiff's Claims Under The Remaining Consumer Protection Statutes Fail As A Matter Of Law

If no claims under New York law remain, Plaintiff lacks Article III standing to pursue the out-of-state claims, and they should therefore be dismissed on that basis alone. *MacNaughten v. Young Living Essential Oils, LC*, 575 F. Supp. 3d 315, 335 (N.D.N.Y. 2021) ("Because no claims under New York law remain, it does not appear that Plaintiff has Article III standing to pursue her other claims, which arise under the laws of other states, and thus cannot raise them on behalf of yet unnamed class members"); *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676 (ADS)(WDW), 2012 WL 764199, at *7 (E.D.N.Y. Mar. 5, 2012) ("Generally, the dismissal of the named plaintiff's claims before a motion for class certification has been filed would result in the dismissal of the complaint"); *see also Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018) ("*[A]s long as the named plaintiffs have standing to sue the*

*named defendants*, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), not a question of 'adjudicatory competence' under Article III") (emphasis added) (citations omitted). But even if this Court finds Plaintiff has standing to pursue the out-of-state claims, the claims for violations of the consumer protection statutes of the remaining 39 states and the District of Columbia are subject to the same fatal flaws as the NYGBL claim.

Each of the remaining consumer protection statutes cited in the Amended Complaint require an allegation of conduct that is either deceptive, misleading, unfair or unconscionable:

- AC ¶ 83, citing violation of Ala. Code § 8-19-5(27) ("engaging in any other *unconscionable, false, misleading, or deceptive act* or practice in the conduct of trade or commerce") (emphasis added);

- AC ¶ 86, citing a violation of Alaska Stat. § 45.50.471(b)(11) ("engaging in any other conduct creating a *likelihood of confusion or of misunderstanding and which misleads, deceives,* or damages a buyer . . . with the sale or advertisement of goods or services) (emphasis added);

- AC ¶ 90, citing a violation of Ark. Code Ann. § 4-88-107(a)(10) ("engaging in any other *unconscionable, false, or deceptive act* or practice in business, commerce, or trade") (emphasis added);

- AC ¶ 93, citing a violation of Cal. Bus. & Prof. Code § 17200 (prohibiting "*unlawful, unfair or fraudulent* business act or practice and *unfair, deceptive, untrue or misleading* advertising") (emphasis added);

- AC ¶ 97, citing a violation of Conn. Gen Stat. § 42-110b(a) ("no person shall engage in unfair methods of competition and *unfair or deceptive acts* or practices in the conduct of any trade or commerce") (emphasis added);

- AC ¶ 101, citing a violation of 6 Del. Code § 2513(a) (prohibiting "*deception, fraud, false pretense, false promise, misrepresentation, unfair practice*, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission") (emphasis added);

- AC ¶ 103, citing a violation of D.C. Code §§ 28-3904(e) & (f) (actionable where a defendant "*misrepresent*[s] as to a material fact which has a tendency to *mislead*" or "fail[s] to state a material fact if such failure tends to *mislead*") (emphasis added);

- AC ¶ 107, citing a violation of Fla. Stat. § 501.204(1) (prohibiting "*unfair* methods of competition, *unconscionable* acts or practices, and *unfair or deceptive* acts or practices") (emphasis added);

- AC ¶ 111, citing a violation of Ga. Code Ann. § 10-1-393(a) (prohibiting "*unfair or deceptive* acts or practices in the conduct of consumer transactions") (emphasis added);

- AC ¶ 115, citing a violation of Haw. Rev. Stat. § 480-2(a) (prohibiting "*unfair* methods of competition and *unfair or deceptive* acts or practices in the conduct of any trade or commerce") (emphasis added);

- AC ¶ 119, citing a violation of 815 ILCS § 505/2 (prohibiting "*unfair methods of competition and unfair or deceptive acts or practices*") (emphasis added);

- AC ¶ 123, citing a violation of Ind. Code Ann. § 24-5-0.5-3(a) (prohibiting "an *unfair, abusive, or deceptive* act, omission, or practice") (emphasis added);

- AC ¶ 126, citing a violation of Iowa Code Ann. § 714h.3(1) (prohibiting "*unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission* of a material fact, with the intent that others rely upon" it) (emphasis added);

- AC ¶ 130, citing a violation of Kan. Stat. Ann. §§ 50-626(b)(2) & (3) (prohibiting the "willful use . . . of *exaggeration, falsehood, innuendo or ambiguity* as to material fact" or the "*willful failure to state a material fact or willful concealment, suppression, or omission* of a material fact") (emphasis added); [11]

- AC ¶ 134, citing a violation of La. Rev. Stat. § 51:1405(A) (prohibiting the "…*unfair or deceptive* acts or practices in the conduct of any trade or commerce") (emphasis added);

- AC ¶ 137, citing a violation of Md. Code Com. Law §§ 13-301(1) & (3) (prohibiting "*false, falsely disparaging, or misleading* oral, written, or visual statement which has the capacity, tendency, or effect of deceiving or misleading" and the "failure to state a material fact if the failure *deceives of tends to deceive*") (emphasis added); [12]

- AC ¶ 140, citing a violation of Mass. Gen. Laws. Ch. 93a § 2(a) (prohibiting "*unfair or deceptive* acts or practices in the conduct of any trade or commerce") (emphasis added);

- AC ¶ 144, citing a violation of Mich. Comp. Laws § 445.903(1)(s) (prohibiting the "fail[ure] to reveal a material fact, the omission of which tends to *mislead or deceive*") (emphasis added);

- AC ¶ 148, citing a violation of Minn. Stat. § 325f.69(1) (prohibiting "*fraud, false pretense, false promise, misrepresentation, misleading* statement *or deceptive* practice") (emphasis added);

- AC ¶ 152, citing a violation of Mont. Code Ann. § 30-14-103 (prohibiting "*unfair or deceptive acts or practices* in the conduct of any trade or commerce") (emphasis added);

---

[11]   The Amended Complaint references the wrong sections, "Kan. Stat. Ann. §§ 50-636(b)(2) and (3)." (AC ¶ 130).

[12]   The Amended Complaint references the wrong sections, "Md. Code Com. Law §§ 13-101 (1), (3)." (AC ¶ 137).

- AC ¶ 156, citing a violation of Neb. Rev. Stat. § 59-1602 (prohibiting "*unfair or deceptive* acts or practices in the conduct of any trade or commerce") (emphasis added);

- AC ¶ 160, citing a violation of Nev. Rev. Stat. § 598.0915(15) (actionable where a defendant "knowingly makes any other *false* representation in a transaction") (emphasis added);

- AC ¶ 164, citing a violation of N.H. Rev. Stat. Ann. § 358-A:2 (prohibiting "any *unfair* method of competition or any *unfair or deceptive* act or practice in the conduct of any trade or commerce within this state") (emphasis added);

- AC ¶ 168, citing a violation of N.J. Stat. Ann. § 56:8-2 (prohibiting "any *unconscionable* commercial practice, *deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission* of any material fact with intent that others rely upon such concealment, suppression or omission") (emphasis added);

- AC ¶ 172, citing a violation of N.M. Stat. Ann. § 57-12-3 (prohibiting "*unfair* or *deceptive* trade practices and unconscionable trade practices in the conduct of any trade or commerce") (emphasis added);

- AC ¶ 180, citing a violation of N.C. Gen Stat. § 75-1.1(a) (prohibiting "*unfair or deceptive acts or practices* in or affecting commerce") (emphasis added);

- AC ¶ 183, citing a violation of N.D. Cent. Code § 51-15-02 (prohibiting a "*deceptive* act or practice, *fraud, false pretense, false promise, or misrepresentation*") (emphasis added);

- AC ¶ 186, citing a violation of Ohio Rev. Code § 1345.02(A) (prohibiting "*unfair or deceptive* act or practice in connection with a consumer transaction") (emphasis added);

- AC ¶ 190, citing a violation of 15 Okla. St. Ann. §753(20) (prohibiting a "*deceptive* trade practice" defined as a "misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead" or an "*unfair* trade practice" defined as a practice that "offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious") (emphasis added);

- AC ¶ 193, citing a violation of Ore. Rev. Stat. § 646.607(1) (prohibiting any "*unconscionable* tactic") (emphasis added);

- AC ¶ 197, citing a violation of S.C. Code Ann. § 39-5-20(a) (prohibiting "*unfair or deceptive* acts or practices") (emphasis added);

- AC ¶ 201, citing a violation of S.D. Codified Laws § 37-24-6(1) (prohibiting the knowing "act, use, or employ any *deceptive act or practice, fraud, false pretense, false promises, or misrepresentation* or to *conceal, suppress, or omit any material fact* in connection with the sale or advertisement of any merchandise") (emphasis added);

- AC ¶ 203, citing a violation of Tenn. Code Ann. § 47-18-104(a) (prohibiting "*unfair* or *deceptive* acts or practices") (emphasis added);

- AC ¶ 207, citing a violation of Tex. Bus. & Com. Code § 17.46(a) (prohibiting "*false, misleading, or deceptive acts or practices*") (emphasis added);

- AC ¶ 211, citing a violation of Utah Code Ann. § 13-11-4(1) (prohibiting "a *deceptive* act or practice") (emphasis added);

- AC ¶ 215, citing a violation of 9 Vt. Stat. Ann. § 2453(a) (prohibiting "*unfair or deceptive acts or practices*") (emphasis added);

- AC ¶ 219, citing a violation of Va. Code § 59.1-200(14) (prohibiting "using any other *deception, fraud, false pretense, false promise,* or *misrepresentation*") (emphasis added);

- AC ¶ 222, citing a violation of Rev. Code Wash. Ann. § 19.86.020 (prohibiting "*unfair* or *deceptive* acts or practices") (emphasis added);

- AC ¶226, citing a violation of Wis. Stat. § 100.18(1) (prohibiting "any assertion, representation or statement of fact which is *untrue, deceptive or misleading*") (emphasis added); and

- AC ¶229, citing a violation of Wyo. Stat. § 40-12-105(a)(xv) (prohibiting "*unfair or deceptive* acts or practices") (emphasis added).

Plaintiff has failed to allege any such conduct, or *any* other improper conduct, and certainly not with the heightened pleading standard required by Rule 9(b).  Accordingly, the consumer protection claims asserted pursuant to each of the out-of-state statutes fail as a matter of law.

### C.  PLAINTIFF'S CLAIMS UNDER AT LEAST SIX STATES ARE BARRED BY CLASS ACTION WAIVERS

Several of Plaintiff's consumer fraud claims should be dismissed because Plaintiff is statutorily barred from pursuing class action suits under the relevant state statutes.  Specifically, Plaintiff alleges claims under the laws of Alabama, Georgia, Louisiana, Montana, South Carolina, and Tennessee (where no named plaintiff resides), and class action claims are prohibited by statute.  *See* Ala. Code Ann. § 8-19-10(f) ("A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class"); Ark. Code Ann. § 4-88-113 (f)(1)(B) ("A private class action under this subsection is prohibited unless the claim is being asserted for a violation of Arkansas Constitution, Amendment 89"); Ga. Code Ann. § 10-1-399(a) ("Any person … may bring an action individually, but not in a representative capacity); Haw. Rev. Stat. § 480-13.3(a) ("A class action for claims for a violation of this chapter

*other than claims for unfair or deceptive acts or practices* may be filed, and may be prosecuted on behalf of indirect purchasers by a person other than the attorney general") (emphasis added); La. Rev. Stat. § 51:1409(A) ("Any person … may bring an action individually but not in a representative capacity to recover actual damages"); Mont. Code Ann. § 30-14-133 ("A consumer … may bring an individual action but not a class action"); S.C. Code Ann. § 39-5-140(a) ("Any person … may bring an action individually, but not in a representative capacity, to recover actual damages"); Tenn. Code Ann. § 47-18-109(a)(1) ("Any person … may bring an action individually to recover actual damages").  Accordingly, such claims should be dismissed.  *Delgado v. Ocwen Loan Servicing, LLC*, No.13-CV-4427 (NGG) (ST), 2017 WL 5201079, at *10 (E.D.N.Y. Nov. 9, 2017)  (applying statutory class action bars and finding "plaintiffs' class claims under Alabama's Deceptive Trade Practices Law, Georgia's Fair Business Practices Act, and Tennessee's Consumer Protection Act are dismissed without prejudice" to permit named plaintiffs in those states to amend the complaint to bring claims in their individual capacity only).

## VI.  THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE LEAVE TO AMEND WOULD BE FUTILE

The Amended Complaint is defective at its core because its fundamental allegation – that CVS is obligated to donate $10 million to the ADA – is contradicted by the ADA Agreement. No amount of artful pleading could cure this deficiency, and "any amendment would therefore be futile." *Torres v. Blackstone Grp.*, No. 18-CV-6434 (RA), 2019 WL 4194496, at *4 (S.D.N.Y. Sept. 3, 2019), *aff'd*, 836 F. App'x 49 (2d Cir. 2020). Thus, the court should dismiss the Amended Complaint with prejudice. *Id*.;  *see also Leibovitz v. City of N.Y.*, No. 14-CV-3297 (RA), 2016 WL 3661530, at *2 (S.D.N.Y. July 1, 2016) (dismissing complaint with prejudice where its "deficiencies . . . cannot be remedied by repleading").

**CONCLUSION**

For the foregoing reasons, the Amended Complaint should be dismissed. Because of the fundamental flaws in the Amended Complaint, leave to replead would be futile and the Amended Complaint should therefore be dismissed with prejudice.

Dated:    New York, New York
          October 14, 2022

                                    ZUKERMAN, GORE, BRANDEIS
                                       & CROSSMAN, LLP

                                    By:    */s/ Edward L. Powers*
                                           Edward L. Powers
                                           Florence M. Craig
                                           Vyasa M. Murthy
                                           Eleven Times Square, 15th Floor
                                           New York, New York 10036
                                           Telephone: (212) 223-6700
                                           epowers@zukermangore.com
                                           fcraig@zukermangore.com
                                           vmurthy@zukermangore.com

                                    *Attorneys for Defendants CVS Health
                                    Corporation and CVS Pharmacy, Inc.*