UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEVIN McCABE,

      *Plaintiff*,

  -against-

CVS HEALTH CORPORATION and CVS PHARMACY, INC.,

      *Defendants*.

No. 1:22-cv-3116 (RPK)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Zukerman Gore Brandeis
 & Crossman, LLP
Edward L. Powers
Florence M. Craig
Vyasa M. Murthy
Eleven Times Square
New York, New York 10036
Telephone: (212)-223-6700

*Attorneys for Defendants CVS Health Corporation and CVS Pharmacy, Inc.*

TABLE OF CONTEXTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .............................................................................................................................. 2

    I.  The Unambiguous Terms of the ADA Agreement Defeat the Allegations
       in the Amended Complaint ................................................................................... 2

        A.  There is no CVS Debt ................................................................................. 3

        B.  The Amendment to the ADA Agreement Did Not Alter CVS's Express
           Obligation to Forward All Campaign Donations to the ADA ..................... 4

        C.  Without The Allegations That Are Contradicted by the ADA Agreement,
           All of Plaintiff's Claims Fail ...................................................................... 6

CONCLUSION .......................................................................................................................... 8

TABLE OF AUTHORITIES

**Cases**

*CIT Bank, N.A. v. Zisman,*
  No. 17-CV-02126, 2021 WL 3354047 (E.D.N.Y. Mar. 1, 2021) ............................... 7-8

*Delgado v. Ocwen Loan Servicing LLC*, No 13-CV-4427,
  2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017) ............................................................ 8

*Foresco Co., Ltd. v. Oh,*
  696 Fed. App'x 550 (2d Cir. 2017) ......................................................................... 5

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
  559 U.S. 393 (2010) ................................................................................................ 8

*Sharpe v. A&W Concentrate Co.,*
  No. 19-CV-768, 2021 WL 3721392 (E.D.N.Y. July 23, 2021) .................................. 7

**Other Authorities**

Fed. R. Civ. P. 9(b) ........................................................................................................ 1

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1

Fed. R. Civ. P. 23 .......................................................................................................... 8

Fed. R. Civ. P. 54 .......................................................................................................... 8

Defendants CVS Health Corporation and CVS Pharmacy, Inc. (collectively, "CVS"), by their counsel, Zukerman Gore Brandeis & Crossman, LLP, submit this reply memorandum of law in further support of their motion to dismiss the Amended Complaint ("AC") for failure to state a claim pursuant to [Fed. R. Civ. P. 12(b)(6)](#) and [Fed. R. Civ. P. 9(b)](#).[1]

**PRELIMINARY STATEMENT**

In accordance with the ADA Agreement, CVS asked its customers to make donations to the ADA. Plaintiff concedes that CVS has turned over to the ADA all of the donations that CVS collected. (AC ¶ 33). Plaintiff nevertheless brings this action on the baseless theory that CVS incurred a $10 million debt to the ADA upon signing the ADA Agreement and then used its customer donations to satisfy that obligation. According to Plaintiff, CVS's failure to disclose the purported "CVS Debt" when it solicited customer donations to the ADA constituted fraud, breach of contract, and violations of the consumer protection laws of 41 jurisdictions.

Plaintiff is wrong. As CVS established in its moving brief, there was (and is) no CVS Debt, as a matter of documented fact as well as applicable law and accounting principles. In response, Plaintiff devotes Point I of his Opposition to this issue. But:

- Plaintiff cites no *fact* from the operative document – the ADA Agreement – that supports his CVS Debt assertion.

- Plaintiff ignores – and thereby concedes – the legal and accounting principles cited by CVS, which confirm that there is no CVS Debt.

- Plaintiff cites no authority, legal or otherwise, to support his CVS Debt assertion.

---

[1]    Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss is referred to herein as the "Opposition" or "Opp." CVS's Memorandum of Law in Support of Defendants' Motion to Dismiss is referred to as the "Opening Memorandum" or "Mem."

1

Instead, Plaintiff simply repeats his pleading's ipse dixit (in effect, "it is a debt because I say it is a debt"). As discussed below, Plaintiff's sole argument on this issue is based upon a hypothetical that *confirms* CVS's position: there is no CVS Debt.

Plaintiff separately contends that the ADA Agreement "appears" to permit CVS to retain donations in excess of $10 million. That, too, is meritless because it disregards the express language of the ADA Agreement, which requires all Campaign Donations raised by CVS to be forwarded to the ADA.

As CVS discussed its Opening Memorandum, Plaintiff should not have filed his Amended Complaint. With the ADA Agreement in hand, Plaintiff could not in good faith contend that the CVS customer donations to the ADA were used instead by CVS to pay down its imaginary debt, or that the donations were not fully tax deductible by CVS's customers, or that CVS is entitled to retain any Campaign Donations. The Opposition only serves to re-confirm CVS's position. Plaintiff and his counsel set forth no support for their factual contentions or any good faith basis to allege fraud, breach of contract, or violations of consumer protection laws.

The Amended Complaint is frivolous and should be dismissed.

## ARGUMENT

### I. THE UNAMBIGUOUS TERMS OF THE ADA AGREEMENT DEFEAT THE ALLEGATIONS IN THE AMENDED COMPLAINT

Plaintiff does not take issue with the controlling law cited by CVS that where, as here, the operative document contradicts the factual allegations in a pleading, then the document controls in a motion to dismiss. (Mem. 6).

### A. THERE IS NO CVS DEBT

In accordance with the ADA Agreement, CVS agreed to fundraise on the ADA's behalf for more than three years and, in the event Customer Donations were to not reach $10 million, then CVS pledged to make up the shortfall (the "CVS Pledge"). (AC, Exh. A at 18).

As CVS demonstrated in its moving brief, under both well-settled contract law and applicable accounting rules, the CVS Pledge is a contingent or conditional obligation that only becomes an actual obligation in the future if the triggering event – a shortfall – occurs. (Mem. 6-9). As such, and contrary to Plaintiff's pleading, CVS did not incur a debt to the ADA when it signed the ADA Agreement. (*Id.*).

Plaintiff has no answer. He does not dispute or even address CVS's authority nor does he cite any relevant authority of his own. (*See* Opp. at Point I). Instead, Plaintiff resorts to ipse dixit, repeating – this time with emphasis – his pleading's mistaken contention that "CVS incurred the CVS Debt *as soon as the [ADA Agreement] took effect* and was required to satisfy it by April 30, 2024." (*Id.* at 6; emphasis in Opp.). But this contention contradicts the express terms of the ADA Agreement, which make plain that CVS's potential obligation to donate solely arises "in the event" a shortfall exists or "should a difference still remain" in April 2024, and no sooner. (AC, Exh. A at 18). Thus, as the agreement, the law, and the accounting rules cited by CVS confirm, Plaintiff is wrong. If customer donations meet or exceed $10 million by the 2024 deadline, then there is no obligation that CVS (in Plaintiff's words) is "required to satisfy."

With nothing to say, Plaintiff tries to change the subject. He contends that the "fundamental premise" of CVS's motion, "*which is not stated explicitly* but is implied throughout CVS's memorandum of law," is that "CVS is acting as a guarantor" of its customers. (Opp. 6; emphasis added). Not so. As is clear from the motion, its fundamental premise is the ADA Agreement, which establishes that the CVS Pledge does not constitute a debt to the ADA.

3

Having set up the strawman guarantor argument, Plaintiff then cuts it down, explaining that CVS is not a guarantor because the CVS customers have no legal debt to guarantee. (*Id.*). (Notably, Plaintiff has forgotten his own pleading, which alleges that CVS issued a "CVS Guarantee" to the ADA. (AC ¶ 24).)

Plaintiff then invokes a lengthy hypothetical analogizing CVS to a party owing a "Guaranteed Amount." (Opp. 7). In so doing, Plaintiff unwittingly confirms that his CVS Debt contention is utterly without merit. On the basis of his hypothetical, Plaintiff concludes: "a debt is a debt whether it [i] is due currently or [ii] must be satisfied on a future date." (*Id.*). Under this test, the CVS Pledge to pay a fundraising shortfall, if any, in 2024 is not a debt: (i) *it is not due currently*; and (ii) *it may never be due*. Moreover, the best evidence of CVS's obligations under the ADA Agreement is the agreement itself. The Court need not engage in hypotheticals to find that CVS did not incur a debt when it entered into the agreement.

### B. THE AMENDMENT TO THE ADA AGREEMENT DID NOT ALTER CVS'S EXPRESS OBLIGATION TO FORWARD ALL CAMPAIGN DONATIONS TO THE ADA

Plaintiff suggests that the Amendment to the ADA Agreement "appears" to have altered CVS's obligation to forward all Campaign Donations exceeding $10 million to the ADA. (Opp. 3, 8). Again, Plaintiff is wrong. There is no ambiguity in the ADA Agreement. It expressly provides that "[a]ny amounts raised over $10,000,000 minimum will be donated to the ADA as well." (Mem. 12, citing AC, Exh. A p. 18). That language was unchanged by the Amendment, as Plaintiff concedes. (Opp. 10).

Likewise, as noted in CVS's Opening Memorandum, the ADA Agreement elsewhere provides that "[t]he purpose of this Agreement is to *benefit the ADA and advance its non-profit mission* to prevent and cure diabetes and to improve the lives of all people affected by diabetes

through a Project Power Strategic Partnership." (Mem. 3, *citing* AC, Exh. A at 1 § 1) (emphasis added). Nowhere in Plaintiff's Opposition does he dispute that these provisions remain in full force and effect, nor can he.

Nevertheless, Plaintiff strains to find an interpretation of the agreement that might permit CVS to retain Campaign Donations above $10 million for unspecified initiatives. (Opp. 9-10). Plaintiff is trying to find an ambiguity where none exists. His argument defies basic contract interpretation rules and should therefore be rejected. *See [Foresco Co., Ltd. v. Oh](), 696 Fed. App'x 550, 551 (2d Cir. 2017)* ("In determining intent of the parties, we must 'read the integrated contract as a whole to ensure that undue emphasis is not placed upon particular words and phrases and to safeguard against adopting an interpretation that would render any individual provision superfluous.'") (applying New York law). Nor should the Court permit discovery to "reveal the parties' understanding," as Plaintiff urges, where the contract's terms here are clear and unambiguous. *[Id.]()* ("[E]xtrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous."). Indeed, the ADA Agreement could be no clearer. [2]

---

[2] Plaintiff attaches a highlighted version of the ADA Agreement and claims that the highlighted text shows that "CVS entered into the [agreement] in order to gain sales through its relationship with the ADA." (Opp. 14). This claim is both irrelevant and wholly unfounded. As previously noted, the Agreement expressly acknowledges that its purpose is to benefit the ADA and its mission. Indeed, the agreement provides that "as a non-profit charitable organization the ADA cannot promote or endorse Company's products or services, *either explicitly or implicitly*." (AC, Exh. A at 1 ¶1) (emphasis added). Finally, the highlighted text merely addresses issues of intellectual property, insurance, and the way the parties will describe the campaign and their partnership in marketing materials. It in no way supports Plaintiff's assertion that CVS intended to increase sales through its relationship with the ADA.

5

### C. WITHOUT THE ALLEGATIONS THAT ARE CONTRADICTED BY THE ADA AGREEMENT, ALL OF PLAINTIFF'S CLAIMS FAIL

Each of Plaintiff's claims is premised upon the debunked contentions that (1) a $10 million "CVS Debt" was incurred upon execution of the ADA Agreement and (2) the Amendment to the ADA Agreement permits CVS to retain donations exceeding $10 million (collectively, the "False Allegations").

Thus, Plaintiff relies upon the False Allegations in support of his claim for fraud:

> '[t]he Checkout Message was false, deceptive, and misleading because CVS . . . was, in fact, using Campaign Donations *toward the satisfaction of the CVS Debt*.' and because the result of the [ADA] Amendment is that, 'even *apart* from CVS's using of Campaign Donations toward the satisfaction of the CVS Debt, CVS was not, in fact, committing to forward any part of *any* Campaign Donations to the ADA.'

(Opp. 11, quoting AC ¶¶ 33, 50) (internal citations omitted; emphasis in Opp.).

To the extent Plaintiff's fraud claim is based upon an omission, Plaintiff relies upon the False Allegations to allege that CVS had a duty to disclose and that it failed to disclose material facts:

> [O]nly CVS knew that Campaign Donations were used to satisfy the CVS Debt, and only CVS knew that, under the [ADA] Amendment, Campaigns Donations, to the extent that total Campaign Donations exceed $10 million, would not have to be given to the ADA . . .; and (ii) that it is inherently unfair of CVS to request, without informing its customers of those facts.

(Opp. 11-12).

Plaintiff's assertion that the Campaign Donations are not tax deductible is similarly premised upon the False Allegations:

> Because a Customer could not know whether his Campaign Donation will be used to pay down the CVS Debt or whether, if the CVS Debt had been fully paid, it will be used by CVS instead of given to the ADA, 'a Customer who made a Campaign Donation could not know what, if any, portion of the Campaign Donation was tax-deductible.'

6

(Opp. 5, quoting AC ¶ 61).[3]

Plaintiff alleges scienter based upon the False Allegations that CVS was "inducing [customers] to make 'donations' . . . to pay down the CVS Debt," and that CVS sought to use donations exceeding $10 million for purposes other "than the giving of Campaign Donations to the ADA." (Opp. 13).

Plaintiff cites the False Allegations in support of his breach of contract claim. *See* Opp. 13, citing AC ¶ 29 ("CVS . . . used Campaign Donations towards the satisfaction of the CVS Debt to the extent that Campaign Donations reached $10,000,000"), and AC ¶ 50 ("[E]ven apart from CVS's using the Campaign Donations toward the satisfaction of the CVS Debt, CVS was not, in fact, committing any part of the Campaign Donations to the ADA.").[4]

Finally, Plaintiff's claims for violation of consumer protection laws are all based upon the same False Allegations. *See* Opp. 15 (asserting the NY and out-of-sate consumer protection claims are based upon the same "reasons set forth in Points I through IV" underlying Plaintiff's fraud and breach of contract claims).[5]

---

[3] With respect to the CVS press release and the alleged Massachusetts filing requirement, there is no need for CVS to repeat its arguments on these collateral matters (*see* Mem. 13-14). Plaintiff apparently recognizes that they are not relevant to his claims by discussing them in a section entitled "Miscellany." (Opp. 16-18).

[4] CVS additionally moved to dismiss the breach of contract claim because the Amended Complaint fails to allege the existence of a contract, the terms, the parties to the contract, or any breach. In response, Plaintiff refers the Court to several paragraphs in the Amended Complaint, none of which identifies or sets forth the terms of any operative agreement. (Opp. 13, citing AC ¶¶ 13-16, 29, 46-50). Rather, the cited paragraphs pertain to the same Checkout Message underlying Plaintiff's fraud claims. The Checkout Message accurately stated that "CVS was merely collecting Campaign Donations and forwarding them to the ADA." (AC ¶¶ 15-16).

[5] Plaintiff does not dispute that he lacks standing to pursue out-of-state claims in the event the Court dismisses his New York-based claims. (*See* Mem. 18-19). Relying on *Sharpe v. A&W Concentrate Co.*, No. 19-CV-768, 2021 WL 3721392 (E.D.N.Y. July 23, 2021) and *CIT Bank, N.A. v. Zisman*, No. 17-

7

* * *

Without the False Allegations, each of Plaintiff's claims collapses and fails as a matter of law.

**CONCLUSION**

For the foregoing reasons and those set forth in Defendants' Opening Memorandum, the Amended Complaint should be dismissed with prejudice. Plaintiff has already amended his pleading as of right and has not requested leave to replead. Given the fundamental flaws in the Amended Complaint, further amendment would be futile.

Dated:   New York, New York
         November 11, 2022

                                        ZUKERMAN, GORE, BRANDEIS
                                          & CROSSMAN, LLP

                                        By:    */s/ Edward L. Powers*
                                            Edward L. Powers
                                            Florence M. Craig
                                            Vyasa M. Murthy
                                            Eleven Times Square
                                            New York, New York 10036
                                            Telephone: (212) 223-6700
                                            epowers@zukermangore.com
                                            fcraig@zukermangore.com
                                            vmurthy@zukermangore.com

                                        *Attorneys for Defendants CVS Health Corporation and CVS Pharmacy, Inc.*

---

CV-02126, 2021 WL 3354047, *4 (E.D.N.Y. Mar. 1, 2021), Plaintiff disagrees with CVS that several of his out-of-state claims must also be dismissed because class action suits are barred under the relevant statutes. Neither of these decisions supports Plaintiff's position, or even involves a motion to dismiss: *Sharpe* addresses a motion for class certification pursuant to Fed. R. Civ. P. 23 and *CIT Bank* concerns a motion for attorney's fees pursuant to Fed. R. Civ P. 54. By contrast, the decision cited by CVS is directly on point and granted a motion to dismiss consumer protections claims based upon statutory provisions barring class actions contained in several of the same state statutes Plaintiff invokes in this action. (*See* Mem. 23, *citing Delgado v. Ocwen Loan Servicing LLC*, No 13-CV-4427, 2017 WL 5201079 *10 (E.D.N.Y. Nov. 9, 2017) (discussing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010)). Plaintiff has not distinguished CVS's authority.