UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KEVIN McCABE,

                Plaintiff,                    **MEMORANDUM AND ORDER**
                                                         22-CV-3116 (RPK) (RML)
       v.

CVS HEALTH CORPORATION
and CVS PHARMACY, INC.,

                Defendants.
-----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      Plaintiff Kevin McCabe donated money to the non-profit American Diabetes Association ("ADA") through a point-of-sale solicitation at a CVS pharmacy. According to plaintiff, that solicitation was part of a fundraising campaign conducted pursuant to an agreement between the ADA and defendants CVS Health Corporation and CVS Pharmacy Inc. (collectively, "CVS").[1] CVS promised in the agreement to raise money for the ADA from pharmacy customers, while also agreeing that if it ultimately failed to raise at least $10 million, CVS would make up the shortfall with a donation of its own.

      In this putative class-action lawsuit, McCabe contends that CVS committed common-law fraud, common-law breach of contract, and violations of consumer protection laws in soliciting customers like him for donations. He argues that CVS's promise to the ADA that it would make up any shortfall in its $10 million fundraising goal meant that donations by customers like McCabe were not gifts to the ADA at all, but were instead effectively gifts to CVS. CVS has moved to

---

[1] Defendants contest whether CVS Health Corporation is a party to the fundraising agreement or is a proper defendant. *See* Defs.' Mem. in Supp. 1, n.1 (Dkt. #20–1) (stating that CVS Health Corporation "is not a signatory to the agreement at issue and is not a proper party" in the case). Because plaintiffs' claims are dismissed with prejudice for failing to state a claim, I need not address whether CVS Health Corporation is a signatory to the ADA agreement at issue in this case.

1

dismiss plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), principally arguing that plaintiff has not alleged any material misstatement or culpable omission and has not identified any contract that was breached. For the reasons discussed below, CVS's motion is granted.

## BACKGROUND

The following facts are drawn from the Amended Complaint and the attached exhibits. They are assumed true for the purposes of this order.

### I. CVS's Agreement with the ADA

On April 13, 2021, CVS and the ADA entered into a Corporate Sponsorship Agreement. Am. Compl. ¶¶ 21–22 (Dkt. #13). The agreement provides that the "purpose of this Agreement is to benefit the ADA and advance its non-profit mission to prevent and cure diabetes and to improve the lives of all people affected by diabetes through" a partnership. *Id*., Ex. A at 1.

In the Corporate Sponsorship Agreement, CVS agreed to "offer opportunities to its customers to make a donation to the ADA," including through "in-store fundraising." *Id*. at ¶ 23 (quoting Ex. A at 18, "Sponsorship Fee and Payment"). The funds raised each year would be paid to the ADA on an annual basis. *Ibid.* (quoting Ex. A at 18). CVS further agreed that it would "raise for the ADA a minimum of $10,000,000" by December 31, 2023. *Ibid.* (quoting Ex. A at 18). If CVS failed to raise $10 million, CVS agreed to either "donate funds to the ADA equal to the difference in the funds donated and $10,000,000," or, "in its sole discretion, elect to conduct additional consumer campaigns prior to April [xx], 2024." *Ibid*. (quoting Ex. A at 18; [xx] in original). If a shortfall remained "after the additional consumer campaigns, if any," CVS agreed to donate the funds needed to reach $10 million. *Ibid.* (quoting Ex. A at 18). If CVS raised over $10 million, it promised to donate the excess to the ADA as well. *Ibid*. (quoting Ex. A at 18). The agreement lists certain ADA initiatives connected to the program, *id*., Ex. A at 1, including

education programs known as "Project Power," "Project Power Adults," and "Project Power Kids," *id*., Ex. A at 9–12.

On October 28, 2021, CVS and the ADA amended the Corporate Sponsorship Agreement. The amendment stated that CVS "may direct any funds raised in excess of $10,000,000 over the Term of the Agreement to support other initiatives at the Company's discretion, so long as such other initiatives advance the ADA's mission." *Id*. at ¶ 48 (quoting Ex. B at 1). It stated that "[s]uch direction shall be provided in writing by [CVS] to the ADA and shall be subject to the approval of the ADA," but "such approval not to be unreasonably withheld." *Ibid.* (quoting Ex. B at 1).

On November 2, 2021, CVS posted a press release on its website announcing its partnership with the ADA and the upcoming fundraising campaign. *Id*. at ¶ 51. The press release stated that CVS "has committed $10 million over three years to support people in preventing and managing diabetes with increased awareness, knowledge, and action to improve health through [the ADA's] Project Power." *Id*. at ¶ 51 (quoting Ex. C) (emphasis removed). The press release further stated that "CVS Health will also host an in-store fundraising campaign at all CVS Pharmacy locations nationwide during American Diabetes Month, now through November 27, to give customers an opportunity to support the ADA and build a future without diabetes." *Ibid*.

## II.   CVS's Checkout Solicitations and McCabe's Donation

In November of 2021—American Diabetes Month—CVS raised funds for the ADA in its nearly ten thousand retail stores. *Id*. at ¶ 13; *see id*., Ex. A at 15. During sales transactions, customers "were asked on the checkout screen . . . if they wished, as part of the checkout process, to make a donation . . . above and beyond the price of their purchase, to the ADA by tapping one of several boxes on the checkout screen, each of which contained a pre-selected amount." *Id*. at ¶ 13. Customers could also "decline to make a [c]ampaign [d]onation by tapping a box stating 'no.'" *Ibid.* Plaintiff refers to these statements made to customers during the checkout process as

3

the "Checkout Message," *ibid.*, and alleges that the Checkout Message "was the only disclosure that CVS made to Customers regarding the Campaign," *id*. at ¶ 36.

If a customer donated, the customer would receive a receipt stating that he or she had made a donation to the ADA and specifying the amount of their donation. *Id*. at ¶ 55. The receipt would also state: "100% of donations go to the American Diabetes Association. EIN 13-1623888. Keep this receipt for your tax records." *Id*. at ¶ 56.

On November 15, 2021, plaintiff made a donation through this campaign at a CVS store located in Staten Island, New York. *Id*. at ¶ 69. The Amended Complaint avers that plaintiff "believed, based upon the Checkout Message, and as confirmed by" the statements on his receipt, "that the entirety of his" donation "would go to the ADA, and that absent his" donation "the ADA would receive no part of it." *Ibid.* The Amended Complaint further avers that if plaintiff "had known that at least a portion of his" donation "would not be given to the ADA, he would not have made that portion of his" donation "or would not have made his" donation at all. *Id*. at ¶ 70.

### III.   Procedural History

McCabe filed this lawsuit in May 2022. *See* Compl. (Dkt. #1). After CVS served McCabe with its motion to dismiss, *see* CVS Letter (Dkt. #12), McCabe filed the operative Amended Complaint in September 2022. In the Amended Complaint, McCabe raises what he styles as three claims.

First, McCabe alleges that "CVS engaged in fraud under the common law of the 50 States and the District of Columbia." *Id*. at ¶ 79. This claim appears to rest principally on the theory that the Checkout Message's representation that customers' contributions would go to the ADA was false because of CVS's obligation to make up any shortfall of the campaign's $10 million fundraising goal, *id*. at ¶ 33, and the theory that CVS should have disclosed to consumers "that the ADA would receive at least $10 million whether or not they" donated, *id*. at ¶ 41.

4

Second, McCabe alleges that CVS "engaged in breach of contract under the common law of the 50 States and the District of Columbia," *id*. at ¶ 81—cross-referencing all the factual assertions in his complaint, *id*. at ¶ 78.

Finally, McCabe alleges that CVS violated the consumer protection laws of 41 jurisdictions, including, for customers like McCabe who donated in New York, New York General Business Law ("NYGBL") § 349(a). *Id*. at ¶ 176; see *id*. at ¶¶ 83–231. NYGBL § 349(a) makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.

McCabe represents that he "intends to seek certification of a class . . . comprise[d] of McCabe and all other persons" who donated through the CVS fundraising campaign he challenges. *Id*. at ¶¶ 71–72. He seeks damages, injunctive relief, and attorney's fees. *See id*. at ¶¶ 80, 82, 177–79.

Defendants have moved to dismiss the Amended Complaint. Mot. to Dismiss (Dkt. #20). After the motion was briefed, at the Court's request, the parties submitted supplemental briefing regarding whether plaintiff had alleged a cognizable injury for purposes of plaintiff's claims alleging common-law fraud and a violation of New York's General Business Law. *See* Suppl. Br. Order dated Sep. 12, 2023; Defs.' Suppl. Br. (Dkt. #23); Pl.'s Suppl. Br. (Dkt. #24); Pl.'s Suppl. Reply (Dkt. #26). Plaintiff's response to the Court's order sought leave to file a Second Amended Complaint, which plaintiff attached, in the event that the motion to dismiss were to be granted. Pl.'s Suppl. Br., Ex. A ("Prop. Sec. Am. Compl.").

### STANDARD OF REVIEW

A complaint will only survive a motion to dismiss when it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  When evaluating a motion to dismiss under Rule 12(b)(6), a court "accept[s] all factual allegations in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiff." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022).  But "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.  *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted); *see Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quotation marks, brackets, and citations omitted).

In considering a motion to dismiss for failure to state a claim, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## DISCUSSION

For the reasons discussed below, defendants' motion to dismiss is granted.

### I. The Amended Complaint Fails to State a Claim of Common-Law Fraud

Plaintiff has not plausibly alleged common-law fraud in violation of New York law.  To plead fraud under New York law, a plaintiff must allege "(1) a material misrepresentation or omission of fact (2) made by a defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (brackets and citation omitted); *see Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 491 (N.Y. 2016).  To allege fraud based on an omission, the plaintiff must allege that the defendant had a duty to disclose the omitted information.  *See Merrill Lynch & Co. v. Allegheny Energy, Inc.*,

6

500 F.3d 171, 181 (2d Cir. 2007). Where no fiduciary relationship exists, a duty to disclose may arise "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Loreley Fin. (Jersey) No. 3 Ltd.*, 13 F.4th at 263 (quoting *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 292 (2d Cir. 2006)). In addition, a claim sounding in fraud must meet the heightened standard set forth in Federal Rule of Civil Procedure 9(b), which requires that the allegations "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Here, plaintiff's claims fall short because he has not alleged a material misstatement or culpable omission, and also because he has not alleged a cognizable injury.

*Material misstatement*. McCabe has not plausibly alleged that defendants made any material misrepresentation of fact. Plaintiff's claim rests on the Checkout Message, which he reads to represent "that CVS was merely collecting Campaign Donations and forwarding them to the ADA." Am. Comp. ¶ 16. The Checkout Message described in the Amended Complaint does represent to customers that their donations will go to the ADA. But plaintiff has not plausibly alleged that this representation was false, because it is undisputed that the donations of customers such as McCabe *did* go to the ADA. McCabe suggests that the Checkout Message is nevertheless inaccurate because CVS agreed that if it failed to raise at least $10 million through in-store fundraising, the company would eventually make up the shortfall through its own contribution. *Id*. at ¶¶ 21–45. But the Checkout Message described in the complaint does not contain any representations about whether or not CVS would serve as a backstop of this type, in the event that the money raised from customers fell short of $10 million. Accordingly, McCabe has not alleged any material misrepresentation regarding CVS's promise to contribute its own funds to make up a fundraising shortfall.

7

Nor has McCabe alleged a material misstatement on the theory that the amendment to the agreement between CVS and the ADA gives the company discretion to route donations over the $10 million threshold to a beneficiary other than the ADA. The parties disagree over whether the amendment that McCabe points to confers this discretion. McCabe reads the amendment to allow contributions to go to organizations other than the ADA, Pl.'s Mem. in Opp. 8–9 (Dkt. #21), while CVS maintains that "both before and after the Amendment, CVS was and is required to give all donations it receives to the ADA," Defs.' Mem. in Supp. 12. But even if McCabe is correct, this discretion-conferring amendment would not render any statements in the Checkout Message a material misrepresentation, because McCabe has not alleged that CVS has exceeded the $10 million fundraising threshold or routed customer donations to any beneficiary other than the ADA. In the absence of any plausible allegation that CVS sent customer donations to a non-ADA beneficiary, plaintiff has not plausibly alleged that the Checkout Message's representation that customer donations would go to the ADA is false.

Finally, McCabe has not alleged any material misstatement that could underlie a fraud claim based on statements printed on customer receipts or a press release posted to CVS's website. McCabe suggests that a representation on customer receipts that customers' donations to the ADA were tax deductible is false, arguing—albeit without any citation to pertinent authority—that CVS's promise to make up any shortfall in achieving the campaign's $10 million goal means that customers' donations were not tax-deductible. Pl.'s Mem. in Opp. 17; Am. Compl. ¶¶ 58–61. He further contends that CVS falsely represented in a press release that the company was contributing $10 million to the ADA, in addition to any funds raised through the in-store customer solicitations. Am. Compl. ¶¶ 51–53. But McCabe does not suggest that these statements were themselves material misrepresentations that could underlie a fraud claim, instead describing both as bearing

on his lawsuit because they reflect "CVS's bad faith and fraudulent intent." Am. Compl. ¶¶ 51, 54. That concession is wise, because plaintiff has not suggested that he relied on these alleged misstatements, or that they caused damage to him—as necessary for those statements to form the basis for a fraud claim. *See Schlaifer Nance & Co. v, Est. of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997).

*Actionable omission*. McCabe's fraud-by-omission theory fails because McCabe does not adequately plead that CVS had a duty to disclose the terms of its agreement with the ADA. Absent a fiduciary relationship, a duty to disclose arises only if "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Loreley Fin. (Jersey) No. 3 Ltd.*, 13 F.4th at 263. Plaintiff does not suggest that CVS had a fiduciary relationship with store customers. *Cf. In re Mid–Island Hospital, Inc.,* 276 F.3d 123, 130 (2d Cir.2002) ("[W]hen parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances."). And even assuming that CVS possessed superior knowledge, not readily available to McCabe, regarding CVS's agreement with the ADA, McCabe sets out no facts suggesting that CVS "kn[e]w that" McCabe, or other customers, were "acting on the basis of mistaken knowledge" about the terms of the agreement, *Loreley Fin.*, 13 F.4th at 263. Plaintiff has accordingly failed to state a claim for fraud by omission.

*Cognizable injury*. Equally fatal to plaintiff's fraud claim is his failure to allege a cognizable injury. In New York, "in order to sustain an action for fraud, there must be some actual loss incurred as a direct result of the wrong by the party bringing the action, and in an action for damages, the plaintiff must make a showing of some concrete pecuniary loss." *Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 454 (S.D.N.Y. 2003) (citing

9

*Dornberger v. Metropolitan Life Insurance Co.,* 961 F.Supp. 506, 543 (S.D.N.Y. 1997)). The New York Court of Appeals has held that a plaintiff does not satisfy the injury requirement for either common-law fraud or a violation of Section 349 of New York's General Business Law by alleging that "they never would have purchased" an item were it not for a fraudulent statement. *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999).

As a result, courts in this circuit and New York state courts regularly dismiss common-law fraud and New York General Business Law claims based on such theories of harm. *See, e.g.*, *Pittman v. Chick-fil-A, Inc.*, No. 21-CV-8041 (VM), 2022 WL 2967586, at *6 (July 27, 2022 S.D.N.Y) ("[W]here a plaintiff merely believes she was deceived into purchasing the product and spending what she did, and there [are] no allegations related to the value of the purchased product, or how the product fell short of what it purported to be, a Section 349 claim fails.") (quotation marks and citation omitted); *Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 315 (S.D.N.Y. 2021) ("Plaintiff's alleged injury—that she would not have paid the purchase price for Belviq but for Defendants' deceptive conduct—is not legally cognizable."); *Dimond v. Darden Restaurants, Inc*., No. 13-CV-5244 (KPF), 2014 WL 3377105, at *9 (S.D.N.Y. July 9, 2014) (plaintiff's claim that "he may not have acceded to the 18% gratuity had Defendants provided a different disclosure about that charge" was insufficient to allege actual harm under Section 349); *Baron v. Pfizer, Inc*., 840 N.Y.S.2d 445, 445 (App. Div. 2007) (allegation that plaintiff "would not have purchased the drug absent defendant's deceptive practices" was not sufficient to allege actual harm); *Donahue v. Ferolito, Vultaggio & Sons*, 786 N.Y.S.2d 153, 153 (App. Div. 2004) (allegation that deceptive labels caused plaintiffs to purchase beverages, without more, was not sufficient to allege actual harm).

Plaintiff's allegations of injury fail to state a claim under these principles because the harm plaintiff asserts in his complaint is comparable to those found insufficient in *Small* and later cases. Plaintiff alleges that if he "had known that at least a portion of his Campaign Donation would not be given to the ADA, he would have not made that portion of his Campaign Donation if possible, or would not have made his Campaign Donation at all." Am. Compl. ¶ 70. A plaintiff's assertion that he would have refrained from making a donation does not state an injury any more concrete than allegations that he would have refrained from making a purchase. Accordingly, plaintiff fails to allege a cognizable injury.

## II. The Amended Complaint Fails to State a Claim for Breach of Contract

The Amended Complaint also fails to adequately plead a claim for breach of contract. In New York, "the elements of a breach of contract claim are (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012) (citations omitted). "Generally, a party alleging a breach of contract must demonstrate the existence of a . . . contract reflecting the terms and conditions of their . . . purported agreement." *Mandarin Trading Ltd. v. Wildenstein,* 944 N.E.2d 1104, 1110 (N.Y. 2011) (quotation marks and citation omitted). McCabe does not adequately plead these elements. In the section of his Amended Complaint alleging breach of contract, plaintiff simply cross-references all the factual allegations in his complaint, Am. Compl. ¶ 78—none of which refer to any contract between CVS and customers, *see id*. at ¶¶ 1–77—and then asserts that "CVS engaged in breach of contract under the common law of the 50 State and the District of Columbia," *id*. at ¶ 81. Because plaintiff has failed to plausibly allege the existence of contract between himself and CVS, these allegations fail to state a claim.

Even were the Amended Complaint construed to allege that the Checkout Message set out the terms of a contract between CVS and its customers, plaintiff's breach-of-contract claim would fail. *See* Pl.'s Mem. in Opp. 13 (asserting without elaboration that it is "untrue" that plaintiff failed to "alleg[e] the existence, terms, or parties to the contract" and citing portions of the Amended Complaint describing the Checkout Message). As discussed above, while the Checkout Message can be read to promise the customers' donations would go to the ADA, plaintiff has not plausibly alleged that customers' donations have been used in any other manner. *See* p. 7. And the Checkout Message cannot plausibly be read to set out any other terms of a contract between CVS and its customers. Accordingly, had plaintiff pleaded breach of contract on this basis, plaintiff's claim would fail.

### III. The Amended Complaint Fails to State a Violation of the New York General Business Law

McCabe fares no better in alleging that CVS violated NYGBL Section 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." NYGBL § 349. *See* Am. Compl. ¶¶ 176–79. To make out a claim under Section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015); *see Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000). While a practice "need not reach the level of common-law fraud" to be deceptive, *Stutman*, 731 N.E.2d at 612, "the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances,'" *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)).

Plaintiff's claims under this provision appear to rest on the same alleged misrepresentations as his common-law fraud claim, and they fail for substantially the same reasons. For the reasons set out in Section I, *supra*, the Amended Complaint fails to plausibly allege that the Checkout Message at the heart of plaintiff's claims was false or likely to mislead a reasonable consumer. *See* pp. 7–9. And because plaintiff has failed to plead any theory of injury other than that he would not have donated to the ADA if he knew CVS had agreed to make up any difference between the amount raised from donations and the $10 million fundraising goal, he has failed to adequately plead an injury under Section 349. *See Lorillard Tobacco Co.*, 720 N.E.2d at 898 (rejecting the theory that "consumers who buy a product that they would not have, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349"). "Courts have uniformly read [*Lorillard*] to mean that [S]ection 349 does not entitle a consumer to a refund of the price of a good or service whose purchase was allegedly secured by deception," *Servedio v. State Farm Ins. Co.*, 889 F. Supp. 2d 450, 452 (E.D.N.Y. 2012) (collecting cases), *aff'd*, 531 F. App'x 110 (2d Cir. 2013), and as discussed in Section I, *supra*, plaintiff's alleged injury is no different from these rejected theories. *See* pp. 9–11. Plaintiff's claim under Section 349 is therefore dismissed.

### IV. The Non-New York State Law Claims Are Dismissed

Finally, the claims brought under the laws of states other than New York are dismissed.

McCabe personally does not have any cause of action under the common law or statutes of states other than New York, because his alleged injury arises only under New York (or federal) law. The Amended Complaint alleges that McCabe is a resident of the Eastern District of New York, Am. Compl. ¶ 6, a citizen of the State of New York, *ibid.*, and was a victim of the alleged fraud while in Staten Island, *id*. at ¶ 69. The Amended Complaint does not allege that he has any

13

connections to other states or the District of Columbia. McCabe himself therefore lacks causes of action under the laws of these jurisdictions that have no connection to his alleged injury. *See, e.g.*, *Pinnacle Oil Co. v. Triumph Oklahoma, L.P.*, No. 93-CV-3434 (DC), 1997 WL 362224, at *1 (S.D.N.Y. June 27, 1997) (holding that "fraud claims are governed by the laws of the jurisdiction where the injury is deemed to have occurred") (citing *Sack v. Low*, 478 F.2d 360, 366 (2d Cir.1973)). Indeed, McCabe does not dispute CVS's claim that he personally only asserts New York common-law and statutory claims. Defs.' Mem. in Supp. 10, n. 7. Thus, the non-New York law claims are not those of McCabe, but of the other putative class members.

Because all of McCabe's claims are dismissed prior to class certification, however, the Court lacks jurisdiction over any putative class action claims. *Martin v. New Am. Cinema Grp., Inc.*, No. 22-CV-05982 (JLR), 2023 WL 2024672, at *9 (S.D.N.Y. Feb. 15, 2023) ("When a named plaintiff's claim is dismissed prior to class certification, the Court lacks jurisdiction over the putative class action claims."); *Lin v. Canada Goose US, Inc.*, No. 21-CV-07614 (LGS), 2022 WL 16926312, at *9 (S.D.N.Y. Nov. 14, 2022) (collecting cases); *see also Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676 (ADS) (WDW), 2012 WL 764199, at *7 (E.D.N.Y. Mar. 5, 2012); *Bowens v. Atl. Maint. Corp.*, 546 F.Supp.2d 55, 76 (E.D.N.Y. 2008).

The claims of common law fraud, breach of contract, and violation of consumer protection statutes under the law of jurisdictions other than New York are accordingly dismissed.

**V.     The Amended Complaint Is Dismissed with Prejudice**

The Amended Complaint is dismissed with prejudice. A court generally should grant leave to amend in the absence of "evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 283 (2d Cir. 2000). Nevertheless, leave to amend "should be denied" if "repleading would be futile." *Goodrich v. Long Island Rail Rd. Co.*, 654 F.3d 190, 200 (2d Cir.

14

2011). "When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

Here, plaintiff's proposed Second Amended Complaint—submitted after the Court requested additional briefing from the parties in connection with the motion to dismiss—fails to cure the deficiencies in the Amended Complaint. Plaintiff adds a single paragraph that states: "McCabe was injured because, as a result of CVS's misrepresentation, at least a portion of his Campaign Donation was not meaningfully given to the ADA, such that he did not receive that for which he paid." Prop. Sec. Am. Compl. ¶ 72. This proposed amendment does nothing to remedy plaintiff's failure to allege a misleading statement or actionable omission. *See* pp. 7–9. Nor is plaintiff's claim for injury saved by reframing the harm plaintiff suffered as a failure to "receive that for which he paid," Prop. Sec. Am. Compl. ¶ 72, because New York courts have rejected that theory of injury as well. *See, e.g.*, *Donahue*, 13 A.D.3d at 78 (rejecting plaintiffs' theory that they suffered injury from deceptive labeling regarding health benefits of a beverage because the labels "caused them to spend money but receive no health benefits in return" on the ground that this theory relied on "deception as both act and injury, a theory specifically rejected by our courts").

Because plaintiff has already amended his complaint once previously, and plaintiff's proposed Second Amended Complaint does not cure the deficiencies underlying CVS's motion to dismiss, the complaint is dismissed with prejudice. *See, e.g.*, *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware 'of the deficiencies in his complaint when he first amended,' he 'clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.'")

(internal brackets removed) (quoting *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978); *Housey v. Proctor & Gamble Co.,* No. 22-888, 2022 WL 17844403, at *2 (2d Cir. Dec. 22, 2022).[2]

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted, and the Amended Complaint is dismissed with prejudice.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: September 29, 2023
       Brooklyn, New York

---

[2] Because defendants' motion to dismiss is granted, I deny as moot plaintiff's belated request for a pre-motion conference seeking leave to file still a further variation on his complaint. *See* Mot. for Pre-Mot. Conf. 1 (Dkt. #25) (proposing to "add causes of action for: (i) money had and received; and (ii) unjust enrichment"). Plaintiff submitted that pre-motion conference request after the motion to dismiss was fully briefed (including through plaintiff's submission of the Second Amended Complaint analyzed above). Plaintiff cannot add to the record for a fully briefed dismissal motion by making a new pre-motion conference request, and I therefore decline to consider this belated request as bearing on defendant's dismissal motion.